## MURRAY ET AL. *v.* GAULT ET AL.

[No. 22,394. Filed April 23, 1913. Rehearing denied June 17, 1913.]

1. DRAINS.—*Proceedings to Establish.*—*Pending Proceedings.*— *Statutes.*—Pending proceedings, in which ditches had already been established, were saved from the operation of the repealing clause in the act of 1905, concerning drainage, Acts 1905 p. 456, §14, and it·was especially provided that such proceedings should be concluded as if the act of 1905 had not been passed.   p. 662.

2. STATUTES.—*Construction.*—*Legislative Intent.*—In ascertaining the legislative intent in an enactment, the statute should be so construed as to prevent absurdity or injustice.  ·p. 663.

3. DRAINS.—*Proceedings to Establish.*—*Jurisdiction.*—*Statutes.*— The second proviso of §2 of the act of 1907 concerning drainage (Acts 1907 p. 508, §6141 Burns 1908), that when any proposed drain will run into two or more counties, the circuit court of the county having the greatest length of such proposed ditch shall have jurisdiction of the work, considered in connection with §17, which excludes the idea of boards of commissioners holding jurisdiction of drains extending into more than one county, and §21 repealing all existing drainage laws, but providing that any pending proceedings ·should be continued under the new act, except proceedings commenced under the act of March 6, 1905, Acts 1905 p. 456, is broad enough to cover drains already established, so that the circuit court of the county having the greatest length of a ditch established prior to the act of 1905, and partly constructed, acquired jurisdiction.   pp. 664, 665.

4. STATUTES. — *Construction.* — *Provisos.* — *Operation.* — *Legislative Intent.*—While the office of a proviso is not to enlarge or extend the act or section of which it is a part, but rather to put a limitation on the language employed, this rule is to be disregarded if the legislative intent would be thereby overthrown,. · since such intent, when ascertained, must be given effect regardless of the ordinary rules of construction.   p. 664.

5. DRAINS.—*Establishment.*—*Statutory Transfer of Jurisdiction.*— *Parties.*—*Notice.*—Where jurisdiction over a drainage proceeding commenced before the board of county commissioners was transferred to the circuit court by virtue of an act of the legislature, all parties were bound; to take notice thereof without being specially notified.   p. 665.

6. DRAINS. — *Drainage Commissioner.* — *Appointment.*—*Collateral Attack.*—Under the drainage act of 1907 (Acts 1907 p. 508) the circuit court has authority to appoint a commissioner to complete

the construction of a drain commenced prior to that act, and such appointment cannot be collaterally attacked. p. 665.

7. DRAINS.—*Assessment of Benefits.—Confirmation of Report.—Effect.—Subsequent Proceedings.*—The report of viewers, made pursuant to the 1903 amendment of the drainage acts (Acts 1903 p. 186), is not an assessment of the cost of construction, but is an estimate of the cost of construction and report of the amount of benefits to the land affected, so that the effect of an order confirming such report and ordering the ditch established is merely to determine and adjudicate the benefits resulting to each parcel of land by the construction of the drain, and thereafter the cause remains upon the docket for the purpose of carrying into effect the judgment rendered. p. 666.

8. DRAINS.—*Assessment of Benefits.—Collateral Attack.—Presumptions.*—As against a collateral attack on judgment adjudicating the benefits resulting to each parcel of land by the construction of a drain, in the absence of a showing as to what benefits were adjudicated, it will be presumed that such benefits equalled, or exceeded the sums of two assessments made for the cost of construction, where the law under which the drain was constructed forbade any assessment for construction against a tract in excess of the amount of benefits adjudicated. p. 666.

9. DRAINS.—*Construction.—Assessments.—Power to Make Additional Assessments.—Statutes.*—While the drainage statute (Acts 1907 p. 508) does not expressly authorize any further assessment for the construction of a drain after one such assessment has been made, there is implied authority so to do, under certain conditions, within the limits of the adjudged benefits, for the purpose of completing the work. p. 667.

10. DRAINS. — *Assessments. — Additional Assessments. — Right of Recovery on Contractor's Bond.*—The fact that enough money might be recovered on the bond given by a contractor to complete the construction of a drain does not show that there is no necessity for making additional assessments on lands affected, since a recovery on such bond might be had only after long litigation and in the meantime the work already done might be rendered worthless, and since, when the work is completed the court will have ample power to equitably distribute any funds remaining on hands among the parties entitled thereto. p. 669.

11. EVIDENCE.—*Presumptions.—Judicial Acts.*—It will be presumed that the power of a court will be justly exercised. p. 669.

12. DRAINS.—*Construction.—Injunction.—Adequate Legal Remedy.*—Where the circuit court had power in a pending drainage proceeding to administer any relief to which any party thereto was entitled, an owner, objecting to an additional assessment on his lands to complete the construction, had an adequate remedy in

such proceeding, so that a separate suit to enjoin the collection of such additional assessment will not lie.　p. 669.

From Pulaski Circuit Court; *John C. Nye,* Judge.

Action by Asa J. Murray and others against. James A. Gault and others.　From a judgment for defendants, the plaintiffs appeal.　(Transferred from the Appellate Court under subd. 2, §1394 Burns 1908, Acts 1901 p. 565.) *Affirmed.*

*P. M. Buchanan* and *Burson & Burson,* for appellants.

*Geo. W. Holman, Wm. H. Parkinson* and *E. B. Sellers,* for appellees.

Morris, J.—This was a suit by appellants against appellees, to enjoin the collection of alleged illegal ditch assessments.　Appellees' demurrers to the complaint, for insufficient facts, were sustained, and these rulings are here assigned as erroneous.

It is alleged in the complaint, that in 1902, appellees (except Davisson) filed with the auditor of Cass County, their petition for the construction of a ditch, having its source in that county, and extending into the counties of Fulton, Pulaski and White, and terminating in the Tippecanoe river; that "commissioners" (viewers) were appointed, who on May 6, 1903, made a report showing benefits, etc., and the same was confirmed, and the ditch ordered established by the board of commissioners of Cass County; that on August 27, 1903, a contract for the construction of the ditch was awarded to one Hillis for $53,000, who gave bond; that thereupon the board proceeded to apportion and assess the construction cost ($53,000) together with other necessary expenses, estimated at $15,000, and making a total of $68,-000, against the lands reported benefited, and in proportion to the benefits; that lists of such assessments were then made separately in each of the counties, which assessment lists show the amounts required to be paid for construction, on

each parcel of land; that each of appellants fully paid such construction assessment against his land, and afterwards, and after the ditch was partially constructed, the entire proceeding was, by appellees, without notice to appellants, transferred to the Pulaski Circuit Court, which assumed jurisdiction thereof. It is also alleged that the latter court, without notice to appellants, appointed appellee Davisson as commissioner to construct the ditch; that Hillis defaulted, and failed to complete his contract, and Davisson, commissioner, proceeded to let contracts for the completion of the work, and thereafter, in December, 1907, filed in the Pulaski Circuit Court his petition to be allowed to reassess the lands affected by the ditch, and originally assessed, and alleging therein that the original amount fixed by the Hillis contract is insufficient to complete the work; that the petition was granted, and, pursuant to an order of the court, he reassessed the lands of appellants, and made a schedule thereof, copies of which were filed in the offices of the recorders of the four counties, to be recorded as assessments made against the several tracts of land; that the commissioner gave notice to appellants that these assessments must be paid in ten monthly installments.

A schedule, covering many pages of the record, showing the original assessments for construction, and the new assessments, is set out, and is in the following form:

| Name of Owner. | Description of land. | Sec. | T. | R. East. | Assessment paid. | Assessment by Davisson. |
|---|---|---|---|---|---|---|
| Murray, Asa J | N.W. of N.W | 28 | 29 | 1 | $67.72 | $29.28 |
| McCaughey, John E. | N.W. of S.E | 36 | 29 | 1 | 67.72 | 22.28 |
| McCaughey, Milton. | N.pt.S.W.of N.E. | 36 | 29 | 1 | 30.10 | 12.90 |

It is alleged that the new assessments are void for various reasons, among which are the following: the Pulaski Circuit Court had no jurisdiction over the subject-matter, and was without authority to appoint a construction commissioner, and had no power to order a further assessment of the lands; that by suit on Hillis' bond enough money can be recovered

for the completion of the work, and there exists no necessity for any further assessments.

Appellants assume that the ditch was ordered established under the law of 1885, amended in 1889, 1901 and finally in 1903. Acts 1903 p. 384. This assumption is erroneous. The proceedings were instituted under §§24 and 25 of an act approved April 21, 1881 (Acts 1881 [s. s.] p. 410, §§4285-4317 R. S. 1881). In the main, this act continued in force until its repeal in 1905 (Acts 1905 p. 456, §14). Sections 16, 19, 20, 21 and 31 were amended in 1891 (Acts 1891 p. 313). Sections 2, 8 and 9 were amended in 1893, so that the construction of a ditch, as an entirety, might be let to a contractor (Acts 1893 p. 329). Before the viewers had filed their report in relation to this drain (May 6, 1903) §2 of the act of 1881, amended by the act of 1893, had been again amended. Acts 1903 p. 186.

Pending proceedings, in which ditches had already been established, were saved from the operation of the repealing clause in the act of 1905, and it was expressly pro-

1.  vided that such proceedings should be concluded as if the act of 1905 had not been passed. Acts 1905 p. 456, §14. In 1907, an act was passed entitled ''An Act concerning drainage and repealing laws in conflict.'' Acts 1907 p. 508. In the second *proviso,* of §2 of the act (§6141 Burns 1908) is found the following: ''Provided, that when any such proposed drain will run into two or more counties, * * * the circuit court * * * of the county having the greatest length of said proposed ditch shall have jurisdiction of said work.'' Section 17 of the same act provides that the board of commissioners shall have no jurisdiction over any drain, a part of which is located in another county (Acts 1907 p. 508, §6151 Burns 1908). Section 21 of the act (Acts 1907 p. 508) reads as follows: ''All laws and parts of laws heretofore enacted in relation to drainage are hereby repealed: *Provided,* Any pending proceedings shall be continued under this act, except that all proceedings

which shall have been commenced under and in accordance with an act entitled 'An Act concerning drainage', approved March 6, 1905, shall be concluded and determined in accordance with all of the provisions of said act.''

By virtue of the provisions of §§2, 17 and 21, of the act of 1907, the circuit court of Pulaski County, in 1907, assumed jurisdiction of the proceedings.

Appellants earnestly contend that under the second proviso of §2 of the act of 1907, the Pulaski Circuit Court acquired no jurisdiction, because this was not a ''proposed drain,'' but on the other hand, one long before established, and partly constructed; that the board of commissioners of Cass County lost jurisdiction because of the provisions of §17, and consequently the proceeding abated.

A familiar rule in ascertaining the legislative intent in an ambiguous statute, is to so construe it, if possible, as to prevent absurdity or injustice. *State* v. *Ensley* (1912), 177 Ind. 483, 97 N. E. 113, and cases cited. It was recognized by the legislature of 1907, that proceedings were then pending for the construction of drains, established, not only under the act of 1905, but also under previous acts. The legislators of 1907 must have known, because a matter of general knowledge, that drains were then being constructed, single ones of which extended into and through several counties, involving in construction, an expenditure of hundreds of thousands of dollars, and a great length of time. It is also a matter of common knowledge that a partially constructed drain may be a hindrance rather than a help, in draining wet lands, and, under some circumstances, might become a nuisance and a menace to public health. It is inconceivable that any legislature should ever deliberately inflict on a community such a scheme of spoliation and evil as contemplated by the abatement of proceedings in the construction of drains, already established.

What intent is evinced by the language of the act, read in the light of §8 (Acts 1907 p. 508, §6148 Burns 1908), which

declares that the act shall be liberally construed to
3.    promote drainage, and, considering also, the previous
act of 1905? After the taking effect of the act of
1905, by virtue of the saving clause, the board of commissioners of Cass County retained jurisdiction of the drain in controversy here, the same as if the act had never been passed. Section 17 of the act of 1907, manifestly excludes the idea of boards of commissioners holding jurisdiction of drains extending into more than one county, unless such jurisdiction is saved by some other provision of the act. No such provision appears. By §21, however, the legislative intent that pending proceedings shall not abate is evidenced by the declaration that "any pending proceedings shall be continued under this act" (Acts 1907 p. 508). This language contains no ambiguity, and it cannot be doubted that the act, as interpreted by the legislature, was broad enough to confer jurisdiction, over any pending proceeding, on some tribunal therein named; and no doubt it was the intention, that jurisdiction of a drain extending into more than one county, that had already been established by order of a board of commissioners, was to be conferred on the circuit court of the county containing the greatest length of the drain. While the proviso of §2 of the act, standing alone, might appropriately be construed as applicable only to proposed ditches, yet, when considered, as it should be, in connection with §§17 and 21 of the same act, it must be held broad enough to cover drains already established.

Counsel for *amicus curiae* have filed a brief here in support of appellants' contention that the Pulaski Circuit Court had no jurisdiction of the subject-matter, and urge
4.    for our consideration the proposition that the second
proviso, found in §2, cannot enlarge the operation of the preceding part of the section; that the office of a proviso is not to enlarge or extend the act, or the section of which it is a part, but rather to put a limitation upon the language which the lawmaker has employed. The above rule is well

recognized by standard authority. *Stiers* v. *Mundy* (1910), 174 Ind. 651, 92 N. E. 374; 2 Lewis' Sutherland, Stat. Constr. §§351, 352; *Huddleston* v. *Francis* (1888), 124 Ill. 195, 197, 16 N. E. 243; *In re Webb* (1862), 24 How. Prac. 247; 26 Am. and Eng. Ency. Law (2d ed.) 678. In *Stiers* v. *Mundy, supra,* this court said: "While it is true that the rational and appropriate office of a proviso is to qualify and restrain the preceding clause in the section of which it is a part, unless it clearly appears that it was to be given a broader application, yet if it is manifest that the object and intent was to give the proviso a scope beyond the section in which it is found it will be construed as restraining and qualifying preceding sections relating to the subject-matter of the proviso, without regard to its position and connection." A review of Indiana statutes, shows that the proviso is a favorite of our legislators. In a single one of the twenty-four sections of the drainage act of 1907, are found nine provisos. Other acts bear similar marks. A superficial examination of these provisos shows that in many instances the rule contended for by appellants must be disregarded or the legislative intent overthown. Such intent, when ascertained, must be given effect, regardless of ordinary rules of construction. The intent here is manifest, and we hold that upon the taking effect of the drainage act of 1907, the Pulaski Circuit Court was invested with jurisdiction of the proceedings in controversy. As the law transferred the jurisdiction of the proceeding from the board to the circuit court, all parties were bound to take notice thereof, and no obligation rested on any one to notify appellants of the transfer. The act of 1907 authorized the court to appoint a commissioner to complete the construction of the drain, and the appointment of Davisson cannot be collaterally attacked.

Appellants contend that the assessments for construction, made by the Cass County board against their respective

lands, having been fully paid, such lands were, regardless of
what might thereafter happen, discharged from the lien of
any further assessment for construction.    It would
7.    appear that counsel wholly fail to distinguish between
assessments of benefits and assessments for construc-
tion.    By the terms of the amendment of 1903 (Acts 1903
p. 186), it was the duty of the viewers to make an estimate
of the cost of the entire construction, and report the amount
of benefits to each tract of land benefited.    The statute au-
thorized the viewers, either to allot to each parcel of land,
a share of construction work, in proportion to resulting bene-
fits, or, if that be deemed impracticable, to report without
allotting, stating reasons therefor.    In this case, no allotment
was made, and, presuming that the viewers did their duty
under the law, they reported an estimate of the entire cost
of construction, and the amount of benefits resulting to each
parcel of land affected.    In the nature of things, no assess-
ment for construction was attempted to be made by the
viewers' report, because the viewers could not then have
known what contractors' bids might be.    This report was con-
firmed and the ditch ordered established.    The effect of this
order, among other things, was to determine and adjudicate
the benefits resulting to each parcel of land, by the construc-
tion of the drain.    Thereafter, the cause remained on the
docket for the purpose of carrying into effect the judgment
rendered.    *Perkins* v. *Hayward* (1892), 132 Ind. 95, 31 N.
E. 670; *Pleasant Tp.* v. *Cook* (1903), 160 Ind. 533, 67 N.
E. 262.

The complaint here does not disclose what benefits were
adjudicated in the above order, but, where, as here, the com-
plaint is collaterally attacking the judgment of a
8.    court of general jurisdiction, it must be presumed
that the benefits assessed against each parcel of ap-
pellants' lands equalled, or exceeded, the sum of the two
assessments therefor, one by the board of commissioners of
Cass County, and the other by Davisson, pursuant to the

order of the Pulaski Circuit Court. The law under which this drain was established, forbade any assessment for construction, against a tract, in excess of the amount of benefits adjudicated (Acts 1903 p. 186). The act of 1907, contains a like provision (Acts 1907 p. 508, §5, §6144 Burns 1908). It must be presumed, at least in the absence of contrary averment, that the circuit court did not, in ordering the new assessment for construction, violate the law. Pursuant to the provisions of the amendment of 1903, the board, after the letting of the construction contract, made an estimate of the entire cost of construction, including costs expenses, etc., and made an assessment therefor, against each parcel of land, in proportion to the resulting benefits, already determined.

The act of 1903 makes provision for returning to the landowners the amount realized from a premium, if any, received on a sale of bonds, by requiring such sum to be apportioned *pro rata* to the several assessments against the respective parcels of land, and the amount thus apportioned to operate as payment, *pro tanto,* on the first maturing installment. Acts 1903 p. 186, §1, 6th proviso. While the statute 9. does not expressly authorize any further assessment for construction, it does not forbid it, and, the authority to do so, under certain conditions, is undoubtedly implied. In *Board, etc.,* v. *Fullen* (1887), 111 Ind. 410, 12 N. E. 298, 13 N. E. 574, the question was presented of the authority of a county board to make an additional assessment to pay for the cost of a road improvement, where the original assessment proved insufficient. In the course of the opinion it is said: "It would be idle to declare that the board has power to compel the property to pay the cost of improving the highway and yet deny it the means of effectively exercising that power. Once it is granted that the law charges the entire expense * * * upon those specially benefited, it must follow that it possesses the incidental power to put and continue in motion the machinery by

means of which the power is executed. * * * As the clear intention of the legislature was that the whole expense * * * should be paid by the property benefited, it must follow that the power to carry into effect the intention of the legislature is a continuing one, and that it is not exhausted by its exercise in the first instance. There are many cases in which a power will be deemed a continuing one without any express declarations to that effect. *Macy* v. *City of Indianapolis* [1861], 17 Ind. 267; *Welch* v. *Bowen* [1885], 103 Ind. 252 [2 N. E. 722]; *Goszler* v. *Corporation of Georgetown* [1821], 6 Wheat. *593 [5 L. Ed. 339]." To the same effect see *Tucker* v. *Sellers* (1892), 130 Ind. 514, 518, 30 N. E. 531, and *Kline* v. *Board, etc.* (1899), 152 Ind. 321, 323, 51 N. E. 476, and cases cited.

In *Rogers* v. *Voorhees* (1890), 124 Ind. 469, 24 N. E. 374, the question was whether, in case the original assessment of benefits in a drainage proceeding, under the act of 1885, proves inadequate to complete the work, is the court authorized, under proper proceedings, to refer the matter to the drainage commissioners to reassess benefits in order to procure funds to complete the work. In the opinion, by Mitchell, J. the eminent jurist said: "The power of the court, until the work is fully completed and accepted, must be regarded as a continuing power within the limits above stated, viz., that the entire cost of the improvement must fall upon the lands benefited in proportion to the benefits which accrue to each tract affected, and that no tract can be assessed in a sum exceeding the amount of benefits resulting to it from the work, as adjudged by the court. What good reason can be suggested for holding that if, on account of a supervening flood the cost of completing the work should be greatly increased, the court might not ascertain upon a supplemental petition and notice whether or not the benefits to the lands might not be equal to the expense of constructing the work notwithstanding the enhanced cost. If, as in the present case, the cost or expense of completing

the work is enhanced by expensive litigation, so that the amount expended must either be lost or an additional assessment made, in case the benefit to be derived will, in the judgment of the court, admit of it, we see no reason why a liberal construction of the statute will not authorize it to be done." The ruling in that case more than covers the point in controversy in this one, for here no question is raised regarding the excess of the additional assessment over the amount of benefits adjudicated. We hold that, in proper cases, additional assessments may be made within the limits of adjudged benefits, to secure funds to complete a work of drainage.

It is contended that the facts averred in the complaint show that no necessity existed for making the additional assessments, because enough can be recovered by a suit on the contractor's bond to complete the work. We cannot concede this proposition. It might be only after long litigation that a recovery could be had by such suit. In the meantime, by flood or other cause, the work already done might be rendered worthless. When the work shall have been finally completed, the court will have ample power to distribute equitably among the parties thereto entitled, any funds remaining on hands, and, having the power it must be presumed that it will be justly exercised.

It is insisted by appellees that the complaint is not sufficient to repel a demurrer because an action for injunction will not lie where there is an adequate legal remedy; that here, appellants and appellees, except Davisson, are all parties to the ditch proceeding, transferred by operation of law, to the Pulaski Circuit Court; that Davisson is only an agent of the court, in that proceeding, and is under the court's jurisdiction, and subject to contempt for disobedience; that the Pulaski Circuit Court, in the ditch proceeding, has ample power to grant any proper relief to any party to the proceeding, and, while the same is pending any

aggrieved party desiring relief, on account of any matter involved in such proceeding, must, by petition or otherwise, apply for such relief, not only in that court, but in that cause. Counsel for appellees, cite *Karr* v. *Board, etc.* (1908), 170 Ind. 571, 85 N. E. 1, in support of their contention. In that case the Morgan Circuit Court had jurisdiction of a drain in Morgan County extending into Putnam County. An injunction suit was brought in the Putnam Circuit Court by the board of commissioners of Putnam County to enjoin the drainage commissioner and contractor, acting under the authority of the Morgan Circuit Court, from interfering with certain bridges in Putnam County. It was held that the Putnam Circuit Court was without jurisdiction to determine the controversy. It was also held that both the contractor and commissioner were "agencies or arms" of the Morgan Circuit Court in the drainage proceeding there pending, and subject to contempt for disobedience of the court's orders; that it is inequitable, in a drainage proceeding, wherein jurisdiction may be extended over all persons by supplemental petition, that a landowner should be permitted to arrest proceedings by injunction in another court, while refusing to submit himself to the jurisdiction of the court which has authority, not only over the construction of the drain, but also "to make all orders which are meet in the premises"; that any landowner affected may be made a party to a drainage proceeding, and that it is the "right and duty" of the court to protect such landowner's interest, as the circumstances may require. The reasoning in that case applies here. The Pulaski Circuit Court had the undoubted power, in the pending drainage proceeding, to administer any relief to which any party thereto was entitled, and, since appellants had an adequate remedy in such proceeding, a separate suit for injunction, for any such relief, will not lie. A proceeding affording full relief should not be split into fragments, and determined piecemeal.

Appellants' complaint stated no cause of action, and the demurrers of appellees were properly sustained.

Judgment affirmed.

Myers, C. J., not participating.

NOTE.—Reported in 101 N. E. 632. See, also, (2) 36 Cyc. 1111; (3) 14 Cyc. 1030; (4) 36 Cyc. 1162; (5) 11 Cyc. 714; (6) 14 Cyc. 1050; (7) 14 Cyc. 1043 Anno.; (8, 12) 14 Cyc. 1064; (9) 14 Cyc. 1062; (11) 16 Cyc. 1075. As to the exercise of the power of eminent domain for drainage purposes, see 102 Am. St. 812. As to rules for the construction of statutes in respect of the intent of the lawmakers, see 12 Am. St. 827. As to injunction where the applicant alleging irreparable · injury has a full, complete and adequate remedy at law, see 1 Am. St. 377. On the question of procedure for establishment of drains and sewers, generally, see 60 L. R. A. 161