LONG, MAYOR ET AL. *v.* KINNEY ET AL.

[No. 26,612. Filed May 20, 1936.]

*R. J. Wildman, Joseph N. Tillett, Hugh Lawrence* and *Ben F. Long,* for appellants.

*Claude V. Andrews, Albert H. Cole* and *Frank D. Butler,* for appellees.

TREMAIN, J.—For more than twenty years last past the city of Peru, Indiana, has been a city of the fourth class and has owned and operated electric light and water plans for the convenience and financial profit of its citizens. These plants were built partly from money raised by taxation and partly from their earnings. The

two plants represent an investment of more than one and one-half million dollars.

On the first day of January, 1935, the appellees, being citizens, voters, and taxpayers of the city of Peru, filed an action against the appellants, officers of said city, in which they asked for a temporary restraining order and a permanent injunction against the defendants (appellants), and each of them, enjoining them from assuming and exercising control, management, and operation of said utilities.

In substance the appellees alleged that the city of Peru had no authority to operate its utilities by and through a board of public works and safety, created by Chapter 233 of the Acts of 1933. They claimed that the municipal council possessed full power to control and manage said utilities pursuant to Chapter 190 of the Acts of 1933. In their complaint, and as a part of it, the appellees set out an ordinance adopted by the common council of the city of Peru on the 1st day of September, 1933, reciting therein that pursuant to Section 19, Chapter 190, Acts of 1933, said utilities shall thereafter be operated by the common council as a whole.

To this complaint the appellants filed an answer in abatement in two paragraphs, alleging that the appellees were not the real parties in interest, but if the action was to be maintained at all, it should be by the common council of the city of Peru. Demurrers were sustained to these answers.

Demurrer for want of sufficient facts was filed and overruled as to the complaint. One specification in the demurrer was that under the law the board of public works and safety had the authority to operate said utilities. The issues were closed by an answer in general denial. Trial was had resulting in a judgment for appellees. A motion for a new trial, upon the ground that the decision of the court was not sustained by sufficient evidence

and was contrary to law, was overruled, and an appeal to this court was perfected.

The principal question presented for decision, in various forms, is whether the common council or the board of public works and safety of the city of Peru has the power and authority to control and operate the public utilities owned by the city.

The appellants say that the control of the public utilities is lodged in the board of public works and safety. The appellees say that the control is lodged in the common council. The appellees' contention is based upon Section 19 of Chapter 190, Acts of the General Assembly of 1933. The title of this act discloses that it is an act to amend certain named sections of an act entitled: " 'An act concerning public utilities, creating a public service commission, abolishing the railroad commission of Indiana, and conferring the powers of the railroad commission on the public service commission,' approved March 4, 1913."

Said Section 19 provides that in the operation of any utility owned by any municipality of the state, the municipal council of such municipality or city may operate such utilities, or it may provide for the operation thereof by a committee of its own members, or it may by ordinances establish a utility service board; provided ". . . That if such municipality has a board of public works such board may operate and manage such utility with the same powers and authority as provided herein by a utility service board. . . ."

Said Chapter 190 was approved March 8, 1933, and contains an emergency clause for the immediate taking effect, and repealed laws in conflict therewith. The next day, March 9, 1933, the General Assembly of the State of Indiana enacted Chapter 233, which contained an emergency clause for the immediate taking effect. This chapter is an act concerning the classification and gov-

ernment of civil cities, reducing certain cities to towns and providing for the government thereof, fixing salaries of officers, and repealing all laws in conflict therewith. Section 7 of this act relates to cities of the fourth class and provides that the duties of the board of public works and of the board of safety, as then provided by law, shall be performed by a board known as the "Board of public works and safety," which board shall be composed of the mayor, city attorney, and city civil engineer.

The board of public works was created by the municipal corporations Act of 1905. That act defined the duties, powers, and authority of that board. It placed the control and operation of municipal utilities in the board of public works. The Act of 1905, together with certain amendments, remained upon the statute books, and the provisions for the control and management of the municipally owned utilities remained in the board of public works in 1933, when the General Assembly was in session. Sections 48-1902 and 48-7206, Burns' Ann. St. 1933 (§§11472, 12724, Baldwin's 1934).

As noted above, on March 8, 1933, the General Assembly amended the Public Service Commission Act of 1913. The new act took effect on that date, and provided that municipal councils may operate their public utilities, in the manner provided in Section 19. On the next day the act concerning the classification and government of civil cities was passed with the provision above noted, and repealed all laws in conflict therewith. The act of March 8, 1933, after providing that the municipal council may operate a 'public utility, followed with the proviso that in all cities having a board of public works, such board may operate the municipal utility. This proviso does not enlarge or extend the act. It qualifies and limits that which preceded. *Board of Commissioners* v. *Millikan* (1934), 207 Ind. 142, 190

N. E. 185; *City of Gary* v. *Gary, etc., Cemetery Assn.* (1917), 186 Ind. 446, 116 N. E. 741; *Murray* v. *Gault* (1913), 179 Ind. 658, 665, 101 N. E. 632.

The resolution of the common council of the city of Peru, adopted September 1, 1933, set out in the appellees' complaint and established by the proof given at the trial, clearly shows that the city of Peru did have a board of public works until that date. It cannot be said that the Act of March 8, 1933, repealed that part of the Municipal Corporation Act of 1905,which created a board of public works and vested in it the control of municipally owned utilities, for the reason that the proviso in that act is to the effect that the board of public works may continue to operate such utility. Therefore, when the Act of March 9, 1933, was passed by the legislature there was in existence on that date a board of public works which controlled the utilities of the city of Peru.

The Municipal Corporation Act of 1905 expressly provided that cities may own their own utilities, and the control of the same was placed in the board of public works, created by that act. Since that provision of the 1905 Act was not repealed expressly by the Act of March 8, 1933, this court must say that such provision was in full force and effect on March 9, 1933, when the General Assembly transferred the duties of the board of public works to the new board known as the "board of public works and safety."

The appellees contend that this cannot be true for the reason that the Act of March 8, 1933, had the effect of. repealing that provision of the Act of 1905, and therefore there was no board of public works in existence on March 9, 1933, and no power or authority was vested in such board on that date to be transferred from it to the . new board of public works and safety.

It will be noted that the Act of March 8, 1933, pur-

ported to be an amendment to the Public Utilities Act of 1913, and did not undertake to amend specifically the Municipal Corporation Act of 1905, which created the board of public works in cities of the fourth class and provided that that board shall operate municipal utilities. In addition to this the Act of March 8, 1933, recognized that where such cities had a board of public works, that board may continue to operate the cities' utilities. If the city of Peru did not have, on that date, a board of public works, but controlled its municipal utilities by and through its common council, the position of the appellees would be more tenable, but since it did have a board of public works, which controlled and operated the municipally owned utilities on March 9, 1933, it cannot be said that its powers were not transferred to the new board of public works and safety.

The Acts of March 8 and March 9 are not necessarily in conflict for the reason that the Act of March 8 provides several methods by which the utilities may be operated. The last one named in the proviso provides for the operation by the board of public works, and the act of March 9th simply transferred all the authority of that board to the new board, consisting of the mayor, city attorney, and the city civil engineer. The two acts may be harmonized in this manner. It is the duty of the court to so construe such statutes, especially those enacted as the same session of the legislature, where such construction gives effect and efficiency to both statutes. Of course, if there is conflict between the two acts, the last one passed must prevail. *Newbauer* v. *State* (1928), 200 Ind. 118, 161 N. E. 826; *Shea* v. *The City of Muncie* (1897), 148 Ind. 14, 46 N. E. 138; *Wayne Township* v. *Brown* (1933), 205 Ind. 437, 186 N. E. 841; *Starr* v. *City of Gary* (1934), 206 Ind. 196, 188 N. E. 775.

Under the law and the facts as disclosed by the rec-

ord, it clearly appears that the utilities owned by the city of Peru are properly under the operation and control of the board of public works and safety, and not under the control of the common council. The trial court erred in overruling the demurrer to the complaint.

Judgment is therefore reversed, with instruction to sustain the demurrer to the complaint.