**LUTHERAN HOSPITAL OF INDIANA, INC., Appellant–Petitioner,**

v.

**STATE of Indiana, DEPARTMENT OF PUBLIC WELFARE, and Allen County Department of Public Welfare, Appellees–Respondents.**

No. 02A03–9202–CV–00060.

Court of Appeals of Indiana, Third District.

Aug. 24, 1992.

James A. Federoff, Thomas J. Galanis, Beckman, Lawson, Sandler, Snyder & Federoff, Fort Wayne, for appellant-petitioner.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, Jamie L. Thomp-

son, Lebamoff Law Offices, Fort Wayne, for appellees-respondents.

HOFFMAN, Judge.

Appellant-petitioner Lutheran Hospital of Indiana, Inc. appeals the trial court's order denying it compensation for the hospitalization of three of its patients.

The facts relevant to this appeal disclose that on June 13, 1987, Tim Perrine was voluntarily admitted to the Lutheran Hospital of Indiana, Inc. (Lutheran) for alcohol withdrawal. At admission, his blood alcohol level was .25 and he was exhibiting delirium tremens. He complained he had been vomiting blood. After two weeks, he was allowed to leave the hospital on work release. Prior to discharge, he was allowed weekend leaves of absence. He was discharged on July 10, 1987.

On June 17, 1987, an application for Hospital Care for the Indigent (HCI) was filed with the Allen County Department of Public Welfare. The application was denied in its entirety by the Indiana Department of Public Welfare on October 6, 1987. However, the department later ruled that since there had been signs of delirium tremens, compensation would be permitted through the acute detoxification process. Therefore, compensation was provided for Perrine's stay from June 14, 1987 through June 17, 1987.

An appeal was filed by Lutheran and a hearing was held on November 30, 1988. The administrative law judge (ALJ) entered her findings of fact and decision on January 25, 1989. The ALJ held "that although the extended hospitalization from June 17, 1987 through July 10, 1987 may have been medically appropriate for the patient's rehabilitation and prevention of potential problems that might have occurred if he resumed his drinking, the patient was alcohol free and there is no documentation of continuing symptoms of severity to meet the criteria established at I.C. 12–5–6–2.1 for payments of HCI benefits." The hearing officer found that Perrine was medically stable and, therefore, sustained the denial of benefits for the portion of Perrine's

hospitalization from June 17, 1987 through July 10, 1987.

Lutheran filed a request for review of the ALJ's decision by the Board of Public Welfare on January 31, 1989. The ALJ's decision was upheld by the Board on March 28, 1989.

Lutheran filed a petition for judicial review. The trial court found Perrine had been hospitalized for acute withdrawal, not alcoholism. "The delirium tremens, which were signs of acute alcohol withdrawal, were the emergency which necessitated hospitalization and which qualified the first three days of the hospitalization for coverage." Perrine was "detoxified and out of danger by June 16, 1987." In agreeing with the Board, the trial court held "[t]he remainder of Perrine's hospitalization was merely rehabilitation and, therefore, cannot be covered under the act [HCI]."

Bobbie Lee Archie was voluntarily admitted to Lutheran on October 21, 1988. He was brought to the hospital by workers at the Rescue Mission. He indicated that he had become angry three and a half hours earlier and had used cocaine, smoked crack, and had taken four "uppers and downers." He then rode his bike into a truck but was not injured. This was his first drug use since moving to Fort Wayne a few months earlier.

His history and physical examination on admission were unremarkable and he was in no apparent distress. He was medically stable. The admission assessment was suicidal ideation and attempt, cocaine withdrawal and lumbosacral strain. He was initially treated with neuroleptic medication then placed in Lutheran's substance abuse rehabilitation program. He was discharged on November 18, 1988.

On November 10, 1988, an application for HCI was filed with the Allen County Department of Public Welfare. This application was denied for the month of October 1988 because Archie was financially ineligible. Lutheran does not challenge this denial.

On February 3, 1989, the application was denied by the Indiana Department of Public Welfare for the month of November

1988 for the reason that "[t]he hospital admission does not meet the emergency criteria specified by state law."

An appeal was filed by Lutheran on the denial of HCI benefits for the period of November 1, 1988 through November 18, 1988. An appeal hearing was held on September 28, 1989. The ALJ entered her findings of fact and decision on February 22, 1990. The ALJ held as follows:

"considering the patient was admitted to the hospital for reason of a suicidal gesture while under the influence of drugs, and that as of October 30, 1988 he was drug free and stable to be released on a pass, it must be determined that the condition which prompted the admission had been alleviated and the remainder of his hospitalization addressed the rehabilitation of his substance abuse and personality disorder."

The ALJ, therefore, sustained the denial of HCI benefits.

Lutheran filed a request for review of the hearing officer's decision of the Board of Public Welfare on February 26, 1990. The ALJ's decision was upheld by the Board on April 24, 1990.

The trial court affirmed the Board's decision finding that the treatment Archie received from November 1, 1988 through November 18, 1988 "was not treatment for his suicidal gesture or his depression." "His treatment during the period of time in question was substance dependency rehabilitation." Therefore, his drug rehabilitation, "although beneficial and possibly even necessary, is not the type of emergency care which entitled him to assistance under the Hospital Care for the Indigent Act."

Daniel Bushee was admitted to Lutheran on May 6, 1987, through the emergency room for an overdose of alcohol and possibly drugs. At admission, he showed an alcohol level of .41 and was vomiting blood. He claimed not to have eaten for seven to ten days while drinking heavily. At some point, he was transferred to the psychiatric unit. He was given Librium and vitamins for withdrawal and other drugs for his vomiting. He was discharged on June 3, 1987.

On May 13, 1987, an application for HCI was filed with the Allen County Department of Public Welfare. This application was approved by the Indiana Department of Public Welfare on August 19, 1987, "with length of stay limited to 5/6/87 to 5/10/87." Payment for the remainder of the stay was denied.

An appeal was filed by Lutheran and a hearing was held on November 30, 1988. The ALJ entered her findings of fact and decision on January 24, 1989, holding as follows:

"that although the extended hospitalization from May 11, 1987 through June 3, 1987 was medically appropriate in the prevention of potential life threatening problems that might have occurred if the patient resumed his drinking, the patient had successfully completed detoxification and did not have continuing symptoms of severity to meet the criteria established at I.C. 12–5–6–2.1 for payment of HCI benefits."

Lutheran filed a request for review of the ALJ's decision by the Board of Public Welfare on January 31, 1989. The ALJ's decision was upheld by the Board on March 28, 1989.

Upon judicial review, the trial court found Bushee to be "detoxified and out of danger by May 10, 1987." "The remainder of Bushee's hospitalization was merely rehabilitation and, therefore, cannot be covered under the act [HCI]."

Three issues are raised for review:

(1) whether the trial court erred in adopting the State's interpretation of the HCI Act that the patients were medically eligible for HCI assistance only as long as the patients were in need of continuous emergency medical treatment;

(2) whether this interpretation discriminates against patients who suffer from acute drug or alcohol abuse; and

(3) whether the trial court erroneously considered the financial impact on the State's budget in denying HCI benefits.

 In determining whether the three patients were wrongfully denied HCI benefits as a result of agency action, this Court must decide whether the agency's action was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law; IND.CODE § 4–21.5–5–14 (1991 Supp.). This Court will not reweigh the evidence or judge the credibility of the witnesses. If the agency action is not supported by substantial evidence or is contrary to law, it will be reversed. *Id.*

 The HCI Act is essentially comprised of two basic eligibility tests: a financial test (IND.CODE § 12–5–6–2.1(c)) and a medical test (IND.CODE § 12–5–6–2.1). Financial eligibility is not disputed in this appeal. For medical eligibility the following criteria are provided:

"A resident of Indiana who meets the income and resource standards established by the state department of public welfare under subsection (c) is eligible for assistance to pay for any part of the cost of care provided in a hospital in Indiana that was necessitated after the onset of a *medical condition that manifested itself by symptoms of sufficient severity* that the absence of immediate medical attention would probably result in:

(1) placing the person's life in jeopardy;

(2) serious impairment to bodily functions; or

(3) serious dysfunction of any bodily organ or part.

In addition, a qualified resident is eligible for assistance to pay for any part of the cost of care that is a direct consequence of the medical condition that necessitated the emergency care." (Emphasis added.)

IND.CODE § 12–5–6–2.1(a) (1988 Ed.)

The State does not dispute that the patients qualified for emergency care. The dispute is to how long the benefits should have continued. Lutheran claims that the benefits under HCI should have continued until the *condition* was alleviated. In support of its argument, Lutheran points to IND.CODE § 12–5–6–12 (1988 Ed.) which reads:

"(a) The state department of public welfare shall, with the advice of its medical staff, the department of mental health, and other individuals selected by the administrator of the department, adopt rules under IC 4–22–2 to:

(1) provide for review and approval of services paid for under this chapter;

(2) establish limitations consistent with medical necessity on the duration of services to be provided;

(3) specify the amount of and method for reimbursement for services; and

(4) specify the conditions under which payments will be denied and improper payments will be recovered.

To the extent possible, rules adopted under this section must be consistent with IC 12–1–7–15.7(b).

(b) The rules adopted under subsection (a) must include rules that will deny payment for services provided to a patient after the patient is *medically stable and can safely be discharged.*" (Emphasis added.)

The State Department of Public Welfare subsequently promulgated the following regulation:

"(a) Financial assistance to eligible hospital patients shall not be available to pay any part of the cost of said hospitalization or medical services until the onset of a *medical condition that manifested itself by symptoms of sufficient severity* that the absence of immediate medical attention would probably result in:

(1) placing the person's life in jeopardy;

(2) serious impairment to bodily functions; or

(3) serious dysfunction of any bodily organ or part.

(b) Financial assistance to eligible hospital patients shall be available, consistent with reasonable medical necessity, until such time as the patient is *medically stable and can be safely discharged. Stable means the alleviation of the con-*

*dition which prompted the hospitalization."*

470 I.A.C. § 11.1-2-1 (1992 Ed.)

Lutheran contends that the patients' drug or alcohol abuse was the underlying *condition* which manifested itself through symptoms of sufficient severity that immediate medical attention was necessary. The State does not argue with this contention. However, Lutheran further argues that benefits under HCI do not end with the termination of the symptoms of the condition but continue until the *condition* is remedied. Lutheran points to 470 I.A.C. § 11-1-2-1(b) which defines "stable" as alleviation of the "condition." Therefore, if "condition" has the same meaning in both contexts, termination does not end until the "condition," which in these cases is either drug or alcohol abuse, is alleviated. If this were true, then HCI would cover the rehabilitation programs for the three patients, Perrine, Archie and Bushee.

This Court, while recognizing that the term condition is used in both contexts, does not believe that the legislature intended for the term condition to have the same definition. It has been recognized by the Court that the purpose of HCI is to provide emergency care, not preventative care, for indigent individuals. *See Lutheran Hosp. v. Dept. of Public Welfare* (1991), Ind., 571 N.E.2d 542, 544. Thus, once the emergency ceases, the benefits under HCI terminate. In other words, once the symptoms are alleviated and the patient is medically stable and can be safely discharged, the benefits terminate.

In support of this interpretation, this Court notes that the legislature qualified "condition" in the regulation by adding "which prompted the hospitalization." 470 I.A.C. 11.1-2-1(b). The severe life-threatening symptoms of each patient's condition were what prompted the hospitalization, not the condition itself. This definition is also consonant with the purpose of the HCI to provide emergency care. Therefore, while the use of the term "condition" in both contexts can mislead one into believing it has the same definition, it is apparent that the legislature intended for "condition" to have two different meanings.

Lutheran cites *Lutheran, supra,* in support of its argument. In *Lutheran,* Michael Campbell was admitted under a 72-hour emergency admittance. Campbell had attempted suicide twice in the previous two days. In determining that Campbell's life was in jeopardy to qualify for HCI assistance, the Court decided that HCI was not only to apply to medical emergencies with respect to a person's physical health but also to a person's mental health.

The factual situation differed greatly in this case; the patients, Perrine, Archie, and Bushee, were not denied benefits on the basis that they suffered from a mental health emergency. The patients were provided emergency care. They were denied HCI benefits for rehabilitative care after the emergency had subsided.

Furthermore, the holding in *Lutheran* supports the trial court's decisions in this case. The *Lutheran* Court determined that although Campbell stayed in the hospital for twenty days, this entire stay did not qualify under HCI. Looking to IND.CODE § 12-5-6-12(a) and (b) and 470 IAC 11.1-2-1(b), the Court concluded "[t]hus, even though a patient may remain hospitalized and may benefit from continued therapy or counselling, HCI reimbursement is no longer available if the patient is medically stable." This was the case with Perrine, Archie, and Bushee. While they probably benefitted from the continued hospitalization, they were medically stable and, therefore, not eligible for further HCI benefits.

*County DPW v. Deaconess Hosp.* (1992), Ind.App., 588 N.E.2d 1322, is also distinguishable from this case. Walker, the patient in *Deaconess,* was denied benefits under HCI because upon admittance she was having suicidal considerations rather than suicidal gestures. The Court, in affirming the trial court's reversal of the State DPW's decision, stated that first, the State DPW's decision denying Walker HCI benefits was not based on statute, IND.CODE § 12-5-6-2.1(a), or promulgated regulation, 470 IAC 11.1-2-1, because neither required

suicidal gestures and, therefore, was arbitrary and capricious. *Id.* at 1327. Secondly, the evidence revealed that Walker had "actually" been denied benefits because of the concern for depletion of the funds for the HCI. Such consideration is not a proper consideration for the State DPW and renders its decision arbitrary and capricious. *Id.* at 1328. However, neither situation is present in this case.

Additionally, this Court cannot agree with Lutheran that the decisions in *Lutheran, supra,* and *Deaconess, id.,* render the analysis in *Memorial Hosp. v. Dept. of Public Welfare* (1990), Ind.App., 564 N.E.2d 299, questionable. In *Memorial,* the Court discussed the HCI Act, particularly IND.CODE § 12–5–6–2.1(a). The Court explained that the purpose underlying the act is "to make cost-free emergency medical care readily available to indigent persons who suffer serious physical injury, disease, or defect." *Id.* at 301, quoting *GCMHC v. Dept. of Public Welfare* (1987), Ind.App., 507 N.E.2d 1019, 1023. Clark was admitted to Memorial Hospital due to a chemical dependency on cocaine. The tests performed on her indicated that she did not have any significant amount of the drug in her system at the time of admission. She was denied benefits under the HCI. In affirming the trial court, the Court agreed that at admission to the hospital, "Clark's condition did not present a threat to her life or her bodily integrity." The language makes clear that care provided under the HCI Act is emergency care. Therefore, Clark's treatment, while "necessary and beneficial, was not the type of emergency care which entitled her to assistance under the Hospital Care for Indigent Act." *Id.* at 301. This decision remains unaffected by subsequent decisions of the Court.

Likewise, *Hamilton County D.P.W. v. Smith* (1991), Ind.App., 567 N.E.2d 165 is distinguishable. The Court interpreted IND.CODE § 12–1–7.1–1(b) which governs whether an individual is eligible for Medicaid benefits. Not only is the statutory purpose entirely different from the one in this case, but the statutory language is also wholly different. To be eligible for Medicaid benefits, an individual must have "a physical or mental impairment, disease, or loss" which "appears reasonably certain to continue throughout the lifetime of the individual without significant improvement." This language is no way similar to the language in the statute in this case.

Furthermore, appellant's comparison of the parties' arguments in *Smith* is completely taken out of context. It is true that the Court determined that the relevant consideration was whether Smith's "condition" itself would continue in the future and not whether the symptoms of his condition would be alleviated when under the control of the medication. From this determination, the Court found that Smith's disease was reasonably certain to continue throughout his lifetime. Even though some of the terminology is the same used in this case, the *Smith* case presented an entirely separate and distinct set of circumstances from the one presented in this case and, therefore, is not applicable.

■ In response to Lutheran's second issue, this Court cannot agree with Lutheran that the HCI Act discriminates against patients who suffer from acute drug or alcohol abuse. As discussed previously, these patients do qualify for *emergency* medical treatment when their conditions cause symptoms of a life-threatening nature. The HCI Act was passed to provide emergency care, and each of the three patients in this case was provided with emergency care. In actuality, Lutheran is asking this Court to extend the HCI Act for a purpose of which it was not intended, to provide rehabilitative care for patients suffering from drug and alcohol addictions. It is understandable that Lutheran does not feel that hospitals should have to shoulder the burden of rehabilitative care for indigent drug or alcohol addicts; however, this is an issue for the legislature to address, not this Court.

■ Finally, Lutheran argues that the trial court's decisions in regard to Perrine and Bushee were erroneously based on the financial impact to the State of providing care under the HCI Act. The trial court, in

its conclusions of law, made the same statement in both cases: "If the HCI funds are used to pay for alcohol dependency rehabilitation for every indigent alcoholic in the State of Indiana who is admitted to a hospital rehabilitation program, funds will not be available to pay for the true *emergency* care needed by other indigent patients."

To begin with, this is not the same situation as was presented in *Deaconess, supra.* In *Deaconess,* the Court found that benefits under the HCI Act had "actually" been denied because of the concern for depletion of the funds for the HCI. *Id.* at 1328. There is no such evidence in this case. The trial court's findings were supported by the evidence that the benefits for Perrine and Bushee were terminated due to the cessation of the emergency situation.

Furthermore, the trial court did not state that emergency care should not be provided to certain patients due to a depletion of funds. The trial court only postulated that benefits under the HCI should remain for those situations which are emergency in nature and not extend to rehabilitative care, due to limited availability of funds for the HCI Act.

The trial court's decisions are affirmed.

Affirmed.

RATLIFF, C.J., and GARRARD, J., concur.