STATE of Indiana, Family and Social Services Administration, Division of Family and Children of the Family and Social Services Administration Offices of Medicaid Policy and Planning; and Indiana State Board of Public Welfare, Petitioners–Appellants,

v.

CARMEL HEALTHCARE MANAGEMENT, INC., Respondent–Appellee.

No. 29A04–9308–CV–284.

Court of Appeals of Indiana.

Jan. 31, 1996.

Transfer Denied June 4, 1996.

Pamela Carter, Attorney General, Beth H. Henkel, Deputy Attorney General, Indianapolis, for appellant.

Terrence L. Brookie, Lock Reynolds Boyd & Weisell, Indianapolis, for appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Petitioners–Appellants State of Indiana, Family and Social Services Administration, Division of Family and Children of the Family and Social Services Administration Offices of Medicaid Policy and Planning, and Indiana State Board of Public Welfare (collectively referred to as "the Department") appeal the trial court's determination in favor of Respondent–Appellee Carmel Healthcare Management, Inc. (CHM).

We affirm in part and reverse in part.

### ISSUES

The Department raises the following issues for our review:

1. Whether the trial court erred in finding that the Department waived any challenge to the issues presented at the administrative hearing.

2. Whether the trial court used the proper standard in reviewing the Department's finding that notice was sent to the correct address.

3. Whether the trial court erred in concluding that CHM was entitled to a hearing prior to imposition of the penalty.

4. Whether the trial court erred in concluding that CHM was entitled to recoup the penalty imposed by the Department.

### FACTS AND PROCEDURAL HISTORY

In September of 1989, CHM became the new provider for the Carmel Care Center ("the Center"), a long-term care facility. Pursuant to 470 I.A.C. 5–4.2–5, the "provider" is to file an historical financial report with the Department within sixty days following the end of the first nine months of operation. CHM failed to submit the historical financial report within the period mandated by the regulation.

On July 10, 1990, the rate setting contractor, an agent of the Department, sent a certified letter to the Center, warning that CHM had to provide the historical report within ten days or the initial interim rate would be reduced by ten percent. CHM did not submit the report within the ten day period. On August 7, 1990, the Department sent notice to the Center that, pursuant to 470 I.A.C. 5–4.1–5(g), the Center's "per diem rates are reduced ten percent effective May 1, 1990, and shall continue until the first day of the month after receipt of this report by our Department." (R. 174).

CHM appealed the Department's imposition of the penalty. Following the administrative hearing, the Administrative Law Judge entered findings of fact and conclusions of law. Upon request of the parties, the findings were amended to read:

1. That the provider, Carmel Healthcare Management, Inc., failed to submit an historical report for the first nine months of operation as required by 470 I.A.C. 5–4.1–5(f).

2. That the department sent the provider a ten day notice letter on July 10, 1990, and that the provider received that letter at their address at 118 Medical Drive, Carmel, Indiana, 46032.

3. That this notice letter complied with the regulations and that the Administrative Law Judge finds that the provider did receive said notice and was notified according to the requirements of 470 I.A.C. 5–4.1–5.

4. However, the department did not satisfy all of the requirements prior to the imposition of a ten percent penalty.

5. That the Administrative Law Judge finds that the department imposed the ten percent penalty prematurely without properly notifying the provider and giving the provider a right to a hearing, prior to the imposition of said penalty.

6. That the Administrative Law Judge further finds that prior to the imposition of any ten percent penalty, a hearing is required in order to allow the provider an opportunity to recoup any penalty. *Hathaway v. Mathews* (7th Cir.1976), 546 F.2d 227.

7. That the ten percent penalty which has previously been withheld without opportunity for a hearing, should be immediately reimbursed to Carmel Healthcare

Management, Inc., and the department, if it wishes to impose such penalty, must notify the provider in writing of its intention to do the same and give the provider thirty (30) days within which to appeal that decision and/or recoup any loss which the department intends to impose upon the provider.

8. That it is apparent that the department did not suffer any financial harm due to the late filing of the historical report except for the administrative inconvenience of the late filing of the provider; and that an equitable penalty for said late filing would be from one to five percent of the total penalty depending on the circumstances of the late filing; and in this case the Administrative Law Judge finds that an appropriate penalty would be two percent (2%) of the 10% penalty or approximately $2,000.00 and recommends that said penalty be imposed for this provider and the remainder of the 10% penalty be returned to the provider.

(R. 435–437; 441–442).

The Department appealed the Administrative Law Judge's determination to the Indiana Board of Public Welfare. The Board sustained the Department's imposition of the ten percent penalty. In so doing, it determined that the only issue was whether the notice letter was timely sent to CHM. (R. 470–472).

CHM filed a petition for judicial review. After the filing of briefs and oral argument, the trial court issued findings of fact and conclusions of law. The court determined that the Department erred in imposing the ten percent penalty without providing a hearing beforehand. In doing so, the court determined that: (1) CHM did not receive proper notice of the penalty; (2) the Department had not satisfied all of the requirements prior to imposing the penalty; and (3) the penalty could be recouped by CHM. (R. 131–132). Accordingly, the trial court ordered that the Department calculate the penalty withheld and reimburse the full amount to CHM.

The Department appealed to this court. In a memorandum decision, *State of Indiana, et al. v. Carmel Health Care Management, Inc.,* 641 N.E.2d 1299 (Ind.App.1994), a panel of this court, by 2–1 vote, held that CHM failed to timely file the agency record. The panel further held that this failure deprived the trial court of jurisdiction over the case. Accordingly, the trial court's judgment was reversed and the cause was remanded to the trial court with directions to vacate its judgment and dismiss the petition for lack of jurisdiction. Memo. decision at 7. In an order dated April 17, 1995, our supreme court granted transfer, vacated the memorandum decision, and remanded to this court for a decision on the merits.

We now review the merits.[1]

## DISCUSSION AND DECISION

### I. WAIVER OF THE JURISDICTIONAL CHALLENGE

On September 6, 1990, approximately thirty days after the Department imposed the penalty, CHM filed an appeal letter with the Department raising the issue of whether the Department was in error in sending the notice letter to the Center instead of to CHM's office at a different location. On October 4, 1990, CHM sent a second appeal letter raising the additional issues of pre-hearing imposition and recoupment of the penalty.

After an administrative law judge was appointed, a pre-hearing conference was held. At the pre-hearing conference, the Department, CHM, and the administrative law judge agreed that the issues for administrative review were: (1) whether CHM was given proper notice; (2) whether CHM was improperly penalized without a hearing; and (3) whether CHM was entitled to recoupment. All three issues were subsequently considered at the administrative hearing. In a post-hearing brief, the Department for the first time argued that the issue of notice was the only issue properly before the administrative law judge. The administrative law judge rejected the Department's attempts to limit the issues, and ruled that CHM: (1) had

---

1. We note that the regulations covering payments for services rendered to Medicaid recipients by nursing facilities are now found at 405 I.A.C. 1–14.1.

received proper notice; (2) had been improperly deprived of a pre-imposition hearing; and (3) could recoup the penalty. On appeal from the administrative law judge's decision, the Board sustained the imposition of the penalty. CHM appealed and the trial court overruled the Board. In doing so, it specifically found that "[t]he Department waived any argument with regard to the issues presented for Judicial Review, as such an argument was not timely raised in the earlier administrative proceedings." (R. 130).

The regulation pertaining to provider appeals, 470 I.A.C. 1–4–3(c), requires that a provider, within thirty days after receipt of the initial notice upon which the appeal is premised, file a written appeal setting out each objection to the Department's actions and the legal reasons supporting the objection. The regulation further states that "failure to state objections and the legal reasons therefore, in a timely manner, shall be deemed a waiver of such objections."

In the present case, the initial notice was received on or around August 7, 1990. The September 6, 1990, protest letter was filed within the thirty day period mandated in the regulation; the October 4, 1990, protest letter clearly was not. Nevertheless, the Department agreed with CHM that the issues raised in the October 4 letter were appropriate for consideration by the administrative law judge.

The Department contends that the trial court erred in finding that it waived argument concerning the raising of the issues in the October 4 letter. The Department argues that CHM's failure to timely file objections divested the Department of jurisdiction to decide the issues. In making its argument, the Department analogizes *Indianapolis Yellow Cab, Inc. v. Indiana Civil Rights Commission* (1991), Ind.App., 570 N.E.2d 940, *trans. denied,* and related cases, to CHM's failure in timely raising its objections.

■ In *Yellow Cab,* and the related cases cited by the Department, this court was asked to review a provision of the Administrative Orders and Procedures Act which provides that "[f]ailure to file the [agency] record [with the trial court] within [thirty days] ... is cause for dismissal of the petition for review by the court, on its own motion, or on petition of any party of record to the proceeding." I.C. 4–21.5–5–13(b). We held that "[f]ailure to comply with the statute is jurisdictional and delay in asserting the defect is not fatal." 570 N.E.2d at 942. The basis for this holding is that the general scope of a trial court's subject matter jurisdiction is derived from the statutory and constitutional authority given to the court. *See Weldy v. Kline* (1993), Ind.App., 616 N.E.2d 398, *reh'g denied.* Failure to comply with statutory requirements for invoking that subject matter jurisdiction requires a finding that the court lacks authority to decide the case. The lack of such authority can be raised at any time. *Santiago v. Kilmer* (1992), Ind.App., 605 N.E.2d 237, 240, *reh'g denied, trans. denied.*

In the present case, the filing requirement of 470 I.A.C. 1–4–3(c) is not a prerequisite to subject matter jurisdiction mandated by statute or by the constitution. The requirement is one dictated by the Department itself, and is akin to a prerequisite controlling a trial court's jurisdiction over a particular case. As we held in *Harp v. Indiana Department of Highways* (1992), Ind.App., 585 N.E.2d 652:

> When a court lacks jurisdiction over the particular case, the judgment is voidable, requiring proper and timely objection to the court's exercise of jurisdiction, or the objection is waived. Hence, jurisdiction over a particular case may be established by a party's failure to timely assert its absence. Challenges to a trial court's jurisdiction over the particular case must be raised at the first opportunity to avoid waiver.

*Id.* at 659 (citations omitted).

■ The Department did not challenge the propriety of the October 4 issues until after the administrative hearing had been held. The Department's challenge was too late. The trial court was correct in finding that the Department waived this issue.

## II. STANDARD OF REVIEW

The Department contends that the trial court erred in finding that the ten-day notice

should have been sent to the central office of CHM at 10411 North College Ave., Suite 1, Indianapolis, instead of to the facility address of 118 Medical Drive, Carmel. The Department contends that there is substantial evidence to show that the 118 Medical Drive address was designated by CHM as a proper mailing address.

■ Judicial review of this case is governed by the Administrative Orders and Procedure Act, I.C. 4–21.5–5–1 *et seq.* Under the Act, a trial court reviewing an administrative determination may not try the cause *de novo.* I.C. 4–21.5–5–11. The court must defer to the administrative findings of fact and may not overturn the expert conclusions of the agency merely because the court itself may have drawn different conclusions. *Indiana Department of Natural Resources v. Krantz Brothers Construction Corp.* (1991), Ind.App., 581 N.E.2d 935, 940–41, *reh'g denied.* The trial court sits as a court of appeal, and cannot retry the facts and come to its own conclusions on the merits of the case. The court is limited to a consideration of whether there was substantial evidence to support the determination, whether there was an abuse of discretion, and whether the determination was arbitrary and capricious or contrary to law, as revealed by the uncontradicted facts. *Lutheran Hospital of Indiana, Inc. v. Indiana Department of Public Welfare* (1992), Ind.App., 597 N.E.2d 1301, 1304 *trans. denied.* Substantial evidence is more than a scintilla, but something less than a preponderance of the evidence. *Department of Natural Resources v. Lehman* (1978), 177 Ind.App. 112, 378 N.E.2d 31, 36. An arbitrary and capricious action is one constituting willful or unreasonable action, without consideration and in disregard of the facts and circumstances of the case or without some basis which would lead a reasonable and honest man to such action. *Indiana Board of Pharmacy v. Crick* (1982), Ind. App., 433 N.E.2d 32, 39.

■ In the present case, the record reveals that in two separate "Provider Agreement for Long Term Facilities" documents,

Carmel Care Center was listed as the provider and 118 Medical Drive was listed as the address. Furthermore, in a "Disclosure of Ownership and Control Interest Statement" document, CHM, doing business as Carmel Care Center, designated its address as 118 Medical Drive. These documents constitute substantial evidence supporting the Board's finding that the 118 Medical Drive address was proper. *See Taco Bell Corp. v. United Farm Bureau Mut. Ins. Co.* (1991), Ind.App., 567 N.E.2d 163 (service on local facility effective as service upon organization). The trial court erred in making its own finding on this matter.[2]

## III. PROPRIETY OF PRE–HEARING IMPOSITION OF PENALTY

The Department contends that the trial court erred in concluding that a hearing was necessary before imposition of the penalty. Accordingly, the Department contends that the following conclusions of law are erroneous:

7. The Department must offer the opportunity for an evidentiary hearing prior to the imposition of the 10% penalty in the absence of a threat to patient health or safety.

8. There was no threat to patient health or safety to justify the imposition of the 10% penalty prior to this administrative hearing.

9. Carmel Healthcare Management, Inc. did not receive an overpayment due to discounting, intentional misrepresentation or substantial misstatement of historical, financial or statistical data, so the Department was precluded from recovering retroactively a repayment of the 10% penalty prior to an evidentiary hearing.

(R. 131).

CHM argued to the trial court that the imposition of a penalty before a hearing is prohibited by *Hathaway v. Mathews* (1976 7th Cir.), 546 F.2d 227. In *Hathaway,* the court held that due process requires a pre-deprivation hearing unless there is a threat

---

**2.** CHM points to evidence supporting the trial court's finding of 10411 N. College as the proper address. This evidence is sufficient to support the finding. However, as noted above, the trial court is sitting as a court of review and is not the fact finder.

to patient health and safety. Although the trial court did not explicitly state the basis for Conclusions # 7 and # 8, it is apparent that it relied on *Hathaway* to reach its conclusion. In doing so, it erred.

*Hathaway* was explicitly limited by the Seventh Circuit in *Americana Healthcare Corp. v. Schweiker* (1982 7th Cir.), 688 F.2d 1072, *cert. denied* 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 434 (1983). In *Americana,* the court held:

> The plaintiffs have argued that the prior decision of this court in [*Hathaway* ] supports the contrary conclusion that the plaintiffs are constitutionally entitled to a pre-termination hearing. The *Hathaway* decision predated the later *Northlake* decision and was factually distinguished in a footnote therein.[3] ... To the extent that *Hathaway* remains good law within the circuit it is limited to its unique factual situation, including a lack of prior notice of deficiencies from the terminating agencies and the absence of post-termination appeal procedures.

688 F.2d at 1083. (citations omitted).

■ In the present case, CHM was given notice of the impending penalty and was afforded a post-imposition hearing. CHM was not entitled to a pre-imposition hearing under *Hathaway*. Accordingly, the trial court's Conclusions # 7 and # 8 are erroneous.

The trial court's Conclusion # 9 is also erroneous. The trial court based its conclusion on CHM's argument that the regulations pertaining to recovery of an overpayment through reduction of subsequent payments are applicable. Those regulations provide that retroactive repayment will not be required by providers "except when a field audit verifies overpayment due to discounting, intentional misrepresentation or substantial misstatement of historical financial or historical statistical data which caused a rate higher than would have been allowed had the data been true and accurate." 470 I.A.C. 5–4.1–1(b). The regulations further provide

that deduction from subsequent payments is proper if there is an agreement between the Department and the provider. 470 I.A.C. 5–1–3.6(b)(3).

The definition of the term "overpayment" is derived from 470 I.A.C. 5–1–3.6, which provides that:

> The department may, pursuant to IC 12–1–7–15.7(b)(5), recover payment, or instruct the fiscal contractor to recover payment from any Medicaid provider for services rendered to an individual or claimed to be rendered to an individual, if the department after investigation finds:
>
> (1) that the services paid for cannot be documented by the provider ...;
>
> (2) that the amount paid for such services has been or can be paid from other sources;
>
> (3) that the services were provided to a person other than the person in whose name the claim was made and paid;
>
> (4) that the service reimbursed was provided to a person who was not eligible for medical assistance ...;
>
> (5) that the paid claim arises out of any act or practice prohibited by law or by rules of the department;
>
> (6) that overpayment resulted from inaccurate description of services or inaccurate usage of procedure;
>
> (7) that overpayment resulted from the provider's itemization of services rather than submission of one billing for a related group ...;
>
> (8) that overpayment resulted from duplicate billing; or
>
> (9) that overpayment resulted from claims for services or materials determined not to have been medically reasonable or necessary.

■ The rate reduction in the present case is not a result of a field audit or Department investigation. Furthermore, the rate reduction is not necessitated by an "overpayment" as that term is defined in the regula-

---

**3.** In *Northlake Community Hospital v. United States* (1981 7th Cir.), 654 F.2d 1234, 1243 n. 10, the court emphasized that a post-termination hearing was not provided in *Hathaway*. The

court further emphasized that the plaintiff was not given notice of any deficiencies before termination. The court also stated that *Hathaway* should be limited to its facts.

tions. None of these provisions relates to imposition of the penalty for failure to file the historical data required by 470 I.A.C. 5–4.1–5. Accordingly, the trial court erred in relying on these regulations instead of the clear provisions of 470 I.A.C. 5–4.1–5(f), which authorizes the penalty.

## IV. RECOUPMENT OF THE PENALTY

The Department contends that the trial court erred in concluding that CHM could recoup the penalty imposed pursuant to 470 I.A.C. 5–4.1–5. Accordingly, the Department contends that the following conclusions of law are erroneous:

10. The governing rate setting regulations permit a Provider to recover part or all of the 10% penalty (or avoid it if a prior evidentiary hearing is provided) even though an Historical Report is submitted on an untimely basis under 470 I.A.C. 5–4.1–5.

11. The Department does not suffer any financial loss or other negative impact due to the late filing of an Historical Report when the Provider's Base Rate is calculated to be equal to or greater than the Initial Interim Rate. In fact, the Department actually achieves a financial benefit from the delayed filing since it does not pay interest on the amount reimbursed retroactively to a Provider when a Base Rate exceeds the Initial Interim Rate.

12. A Provider whose calculated Base Rate exceeds the amount of the Penalty Rate (the Initial Interim Rate less the 10% Penalty) is permitted to recover the penalty to the extent the Base Rate exceeds the Penalty Rate. Since Carmel Healthcare Management, Inc.'s Base Rate exceeded its Initial Interim Rate (and thereby the lower Penalty Rate), Carmel Healthcare Management, Inc. is entitled to recover all of the penalty imposed by the Department along with the differential between the Initial Interim rate and its higher Base Rate.

(R. 132).

[10–13] Rules of statutory construction are applicable to the interpretation of administrative regulations. *Caylor–Nickel Clinic*

*P.C. v. Indiana Department of State Revenue* (1991), Ind.Tax, 569 N.E.2d 765, 771, *aff'd* 587 N.E.2d 1311 (Ind.1992). The cardinal rule of statutory construction is to ascertain the intent of the drafter, and all other rules are subservient thereto. *Murray v. Gault* (1913), 179 Ind. 658, 101 N.E. 632; *Cook v. Humana Health Care Plan, Inc.* (1994), Ind.App., 636 N.E.2d 166, 168. When a statute is susceptible to more than one meaning, courts may consider the consequences of a particular interpretation in determining intent. *Leehaug v. State Board of Tax Commissioners* (1991), Ind.Tax, 583 N.E.2d 211, 214. A court cannot presume that the legislature or administrative agency enacted a statute or regulation containing useless provisions. *Indiana State Board of Health v. The Journal–Gazette Co.* (1993), Ind.App., 608 N.E.2d 989, 992–993, *adopted at* 619 N.E.2d 273.

Under 470 I.A.C. 5–4.1–5, a new provider first receives an Initial Interim Rate by filing a financial report projecting costs for the first twelve months. Because the Initial Interim Rate is established based upon projected financial data only, the regulation requires that the provider file a nine month historical report and twelve months of projected data within sixty days following the end of the first nine months of operation. *Id.* These reports are used to calculate the provider's Base Rate for the next full year of operation and serve as a basis for future rates. The Base Rate is effective from the first day of the tenth month of operation until the next regularly scheduled annual review.

At the time of this action, the Department was required to insure that payment rates were "reasonable and adequate to meet the costs incurred by efficiently and economically operated facilities." I.C. 12–1–7–17.2(b).[4] This insured that the payment for nursing facility services under 42 U.S.C. 1396a(a)(13)(A) was in conformity with "state and federal laws, rules, regulations, and quality and safety standards." *Id.* In order to facilitate the setting of rates in accordance with this statutory mandate, the Department promulgated 470 I.A.C. 5–4.1–5 to require the filing of the historical report.

---

**4.** This statute was repealed in 1992. The new statute is I.C. 12–15–14–2.

■ The Department did recognize that under some circumstances it would be impossible to timely file the historical report. Accordingly, the Department promulgated 470 I.A.C. 5–4.1–5(f), which provides for a filing extension upon a showing of circumstances "that preclude a timely filing" and a "full and complete explanation of the reasons an extension is necessary." CHM could have, but did not, request such an extension.[5] The stiff penalty was imposed to insure that this essential document was timely filed.

CHM argued to the trial court, and the court accepted, that imposing a penalty when the Base Rate is higher than the Initial Interim Rate does not make sense because the Department does not "suffer any financial harm or other negative impact" therefrom. This argument ignores the fact that the Department has more than just a monetary interest in the setting of the rate. The Department also has a statutory duty to set reasonable rates, a duty which requires the timely filing of the historical report.

■ The intent of the penalty provision of 470 I.A.C. 5–4.1–5 is clearly to insure timely filing of the historical report to facilitate the accurate setting of rates. Recoupment of the penalty is contrary to this intent. 470 I.A.C. 5–4.1–5 simply does not provide for recoupment, and we will not read this type of provision into the regulation. Accordingly, the trial court erred in allowing such recoupment.[6]

## CONCLUSION

The trial court was correct in finding that the Department waived the issue of whether the issues of the propriety of a pre-imposition hearing and recoupment of the penalty were timely raised. The trial court erred, however, in failing to find that the Department's findings on notice were supported by substantial evidence. The court further erred in concluding that CHM was entitled to a pre-imposition hearing and recoupment of the penalty.

We reverse and remand to the trial court for entry of judgment in favor of the Department.

Affirmed in part and reversed in part.

NAJAM, J., concurs.

CHEZEM, J., dissents as to issue two and concurs in result as to all other issues without a separate opinion.

---

5. CHM correctly points out that the extension allowed in 470 I.A.C. 5–4.1–5(f) appears only in the 1988 version of the regulation. CHM acknowledges that the 1988 version of the regulation is the version that should have been applicable at the time of filing. However, CHM contends that the 1988 regulations were rendered inapplicable by an injunction issued on May 17, 1990.

We find that the 1988 version of 470 I.A.C. 5–4.1–5(f) was not rendered inapplicable by the injunction. The effect of the injunction was to prohibit the state from using certain "tests of reasonableness;" it did not hinder the application of the 1988 regulations as a whole. See Ind. Bd. of Public Welfare v. Tioga Pines (1993), Ind., 622 N.E.2d 935, 938.

6. We note that CHM points out that 470 I.A.C. 5–4.1–4(d)(3) specifically provides that "[r]eimbursement lost because of the penalty [for failure to timely file an annual report] cannot be recovered by the provider." CHM contends that the omission of such language in 470 I.A.C. 5–4.1–5 is an indication that the Department did not intend to limit recoupment of the penalty for failure to timely file the historical report.

We are aware that one of the rules of statutory construction would allow for such a conclusion. However, we find the rule results in an interpretation contrary to the intent of the regulation.