FILED

Aug 01 2019, 7:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Aaron T. Craft
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Stephen R. Snyder
Randall L. Morgan
Snyder Morgan Federoff &
Kuchmay LLP
Syracuse, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Indiana Department of Natural
Resources,

*Appellant-Respondent,*

*v.*

Kevin Prosser,

*Appellee-Petitioner.*

August 1, 2019

Court of Appeals Case No.
18A-MI-2644

Appeal from the Fulton Circuit
Court

The Hon. Wayne E. Steele,
Special Judge

Trial Court Cause No.
25C01-1706-MI-355

**Bradford, Judge.**

# Case Summary

[1] Kevin Prosser owns property on Lake Manitou, and, in 2015, applied to the Indiana Department of Natural Resources ("DNR") for a permit to construct a concrete seawall. Under Indiana law, a concrete seawall may only be constructed in a "developed area," which means a shoreline that has been altered in such a way as to increase its overall length. Prosser contended that a dredging operation that had occurred in 1947 or 1948 near what is now his property ("the Dredging") had increased the overall length of Lake Manitou's shoreline.

[2] DNR denied Prosser's application, and he applied for administrative review. A DNR administrative law judge ("ALJ") affirmed the denial after a hearing, finding that Prosser had failed to establish that the Dredging had lengthened the shoreline of Lake Manitou. After the Natural Resources Commission adopted the ALJ's disposition, Prosser sought judicial review in Fulton Circuit Court. The trial court reversed DNR's denial of his application for a permit to construct a concrete seawall. DNR contends that the trial court erred in reversing its denial of Prosser's application. Because we agree, we reverse.

# Facts and Procedural History

[3] Prosser owns two adjacent parcels located at 2920 and 2922 Country Club Drive South, Rochester, Indiana ("the Property"). The Property is on Lake Manitou, has a 117-foot shoreline, and the Dredging occurred in the area in

1947 or 1948, with the apparent intention of deepening the nearby lake bottom to allow better boat access.

[4] On August 24, 2015, Prosser applied to DNR for a permit to construct a concrete seawall. DNR Assistant Director of the Division of Water James Hebenstreit reviewed Prosser's permit application and, on February 1, 2016, denied it. Hebenstreit denied Prosser's application on the bases that it was incomplete; the Property was in an "area of special concern" rather than a "developed area"; and construction of a concrete seawall would significantly affect fish, wildlife, and plant life near the site. Pursuant to the Indiana Administrative Code, seawalls constructed in an "area of special concern" are required to be made of bioengineered material and/or glacial stone, while a concrete seawall is only allowed in "developed area." 321 IAC 11-4-2(c), -2(d). One thing that qualifies as a "developed area" is a "manmade channel," which is "a watercourse created by mechanical means that connects to the lake at one (1) or more points and by its construction increases the total length of shoreline around the lake." 312 IAC 11-2-11.8.

[5] On February 16, 2016, Prosser petitioned for administrative review. On February 8, 2017, an ALJ conducted an evidentiary hearing, at which former DNR surveyor Rodney Neese, Hebenstreit, and Prosser testified. Among the admitted exhibits were a series of aerial photographs taken in 1940, 1957, 1963, 1998, and 2011/2013, with the 2011/2013 shoreline superimposed onto the earlier photographs. Prosser testified that the photographs appeared to indicate that the shoreline had been lengthened by the Dredging.

[6] Neese testified, however, that the line he superimposed on the photographs could be off by an unknown amount and that the time of year at which the photographs were taken (which was unknown) would affect the amount of vegetation in the lake, as well as its level. Neese opined that the length of Lake Manitou's shoreline could have either increased or decreased between 1940 and 1957. An environmental evaluation prepared on February 1, 2016, by DNR biologist Nathan Thomas was admitted as part of Exhibit 7. Thomas opined, *inter alia*, that "there was no definitive evidence presented to support the fact that the dredging resulted in creating additional lake frontage[.]" Appellant's App. Vol. III p. 30. Finally, Hebenstreit testified that "it's hard to tell where the legal shoreline of that lake was and whether or not [the Dredging] added or decreased the amount of shoreline frontage." Appellant's App. Vol. II p. 151. Hebenstreit opined that the Property's shoreline was an area of special concern.

[7] In addition to his testimony that it appeared to him that the Dredging *had* increased the total shoreline of Lake Manitou, Prosser offered depositions from Joseph Mills and Douglas Sampsel, both of whom testified that they had witnessed the Dredging firsthand. Mills testified that his parents built a house next door to the Property in 1947, when he was nine years old, and that he observed the Dredging. According to Mills, when the bucket containing material dredged from the lake bottom returned to shore, it would also remove a portion of the shoreline.

[8] Sampsel testified that his father had directed the Dredging, excavating the lake bottom down to a depth of five to six feet. While Sampsel testified that the

Dredging could not have helped but alter the shoreline when the bucket was dragged back to shore, he also testified that "we always cleaned up the shoreline, probably taking some new soil, just to make it nice and even and straight and sloped and so that the land owner had a nice front there when we were finished." Appellant's App. Vol. III p. 116.

[9] On March 31, 2017, the ALJ issued its findings of fact and conclusion of law in a nonfinal order, in which it affirmed Hebenstreit's denial of Prosser's application. The ALJ found that aerial photos from before and after the Dredging provided "insufficient clarity and definition to show whether the shoreline of Lake Manitou was increased […] by dredging or other means." Appellant's App. Vol. IV pp. 133–34. The ALJ also found that neither Sampsel's nor Mills's testimony established that, even if parts of the shoreline were removed during the Dredging, the process necessarily lengthened the shoreline because Sampsel's father also "cleaned up" the shoreline, using new soil when necessary.

[10] On April 13, 2017, Prosser filed his objections to the ALJ's nonfinal order. On May 22, 2017, the Natural Resources Commission of DNR affirmed, without modification, the ALJ's disposition in its final order, denying Prosser's application for a permit to construct a concrete seawall. On June 20, 2017, Prosser petitioned for judicial review of DNR's final order. On October 4, 2018, the trial court granted Prosser's petition for judicial review. The trial court's order provided, in part, as follows:

The [ALJ] chose to discount the testimony of Mills and Sampsel first because it was a recollection from 70 years prior to their testimony and second, because it was "based on the faulty assumption that the mere removal of any part of the shoreline would increase the total length of the shoreline around the lake". A trial court may not refuse to consider and weigh[] competent, uncontradicted evidence. *Haynes v Brown*, 88 N.E.2d 795 (Ind. App. 1949). In the *Haynes* case, the Court listed the factors to be considered in determining the credibility of a witness and the weight to be given to the witness's testimony as follows: (1) interest of the witness in the outcome of the trial; (2) the witness's bias and prejudice, if any are shown; (3) the witness's opportunity for knowing and recollecting the facts about which he testifies; (4) the probability or improbability of his testimony; and (5) his demeanor while on the witness stand. *Haynes*, Id. p.797, citing *McKee v Mutual Life Ins. Co. Of New York*, 51 N.E.2d 474 (Ind. 1943). The Court may disregard or disbelieve oral evidence if it is considered unreasonable or inconsistent with facts and circumstances shown by the other credible evidence in the case. *Wright v. Peabody Coal Company*, 77 N.E.2d 116 (Ind. 1948). There was no justification for the Administrative Law Judge's discounting of the Mills' and Sampsel's testimonies based on other evidence presented at trial.

Order pp. 6–7. The trial court concluded that Prosser established that the Property is a "developed area" and overturned DNR's denial of his petition for a permit to construct a concrete seawall.

# Discussion and Decision

## I. Background

The Lakes Preservation Act ("the Act"), found at Indiana Code chapter 14-26-2, prohibits construction of seawalls within or along the shoreline of a "public

freshwater lake " absent a permit issued by DNR.  Ind. Code § 14-26-2-23(a)(2). A "'public freshwater lake' means a lake that has been used by the public with the acquiescence of a riparian owner" but does not include Lake Michigan or certain other lakes.  Ind. Code § 14-26-2-3.  A seawall is "a manmade structure placed along the shoreline or water line of a public freshwater lake for the purpose of shoreline stabilization."  312 I.A.C. 11-2-21;.

[12] The Act authorizes DNR to "issue a permit for the construction of a seawall after investigating the merits of the application[.]"  Ind. Code § 14-26-2-23(c). DNR may consider "any factor, including cumulative effects of the proposed activity upon[,]" *inter alia*, "fish, wildlife, or botanical resources."  Ind. Code § 14-26-2-23(c)(2).  The Act also empowers DNR to promulgate rules providing objective standards for the issuance of permits, Ind. Code § 14-26-2-23(e), which DNR has, in fact, done, *see* 312 I.A.C. 11.  Before DNR may issue a seawall permit, it must determine "that issuance of the permit would not result in significant environmental harm to the public freshwater lake."  312 I.A.C. 11-3-3(d)(1).

[13] DNR issues permits for the construction of new seawalls depending on the nature of the location of the proposed seawall.  To summarize these regulations, seawalls installed in a significant wetland or along a natural shoreline must be built with bioengineered material; seawalls installed in "an area of special concern" must be built with bioengineered material, glacial stone, or both; and seawalls installed in "a developed area" must be built with

one or more of bioengineered material, glacial stone, riprap, concrete, or steel sheet piling. 312 I.A.C. 11-4-2(b)–(d).

[14] This case turns on whether the Property qualifies as an "area of special concern" or is a "developed area," and the parties seem to agree that the only factual issue in this case is whether the Dredging increased the total length of the shoreline around Lake Manitou. If Prosser established that it did, he may be issued a permit to install a concrete seawall. If Prosser failed to establish that it did, his application was properly denied.

## II. Whether the Trial Court Erred in Granting Prosser's Petition for Judicial Review

[15] We review an administrative agency's order using the same standard as the trial court. *Gray v. Med. Licensing Bd. of Ind.*, 102 N.E.3d 917, 921 (Ind. Ct. App. 2018). Judicial review under the Indiana Administrative Orders and Procedures Act is limited, and the person seeking judicial review bears the burden of establishing the agency action's invalidity. Ind. Code § 4-21.5-5-14(a). We must defer to the agency's expertise, and we may set aside an agency action only if the challenger shows that he has been prejudiced by a decision that is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence." Ind. Code § 4-21.5-5-14(d). We do not try the case de novo, reweigh the evidence, judge witness credibility, or

substitute our judgment for that of the agency. Ind. Code § 4-21.5-5-11. We are bound by the agency's findings of fact if those findings are supported by substantial evidence. *Ind. Civil Rights Comm'n v. S. Ind. Gas & Elec. Co.*, 648 N.E.2d 674, 679 (Ind. Ct. App. 1995), *trans. denied*. "Substantial evidence is more than a scintilla, but something less than a preponderance of the evidence." *State v. Carmel Healthcare Mgmt., Inc.*, 660 N.E.2d 1379, 1384 (Ind. Ct. App. 1996) (citation omitted), *trans. denied*.

[16] The question before us as we review the ALJ's disposition is whether the administrative record contains substantial evidence to sustain the ALJ's finding that Prosser failed to establish that the Dredging lengthened the shoreline of Lake Manitou, which was his burden. We conclude that the record does, in fact, support the ALJ's finding. Neese testified that he used a technology called Geographic Information Systems ("GIS") to superimpose the lines onto the aerial maps and that, while the exact accuracy of GIS was unknown, error was present in any scaled photograph. Neese also testified that there was no way to know either the water level on the days on which any of the aerial photographs were taken or the time of year, which would have affected the water level (and therefore the shoreline) as well as the amount of vegetation in the lake. Neese opined that the length of Lake Manitou's shoreline could have either increased *or* decreased between 1940 and 1957.

[17] In addition, Thomas opined that "there was no definitive evidence presented to support a finding that the dredging resulted in creating additional lake frontage[.]" Appellant's App. Vol. III p. 183. Finally, Hebenstreit testified that

"it's hard to tell where the legal shoreline of that lake was and whether or not [the Dredging] added or decreased the amount of shoreline frontage." Appellant's App. Vol. II p. 151. Keeping in mind that it was Prosser's burden to establish that the shoreline had been lengthened and that we show considerable deference to state agencies working within their areas of expertise, we conclude that the ALJ's conclusion was supported by substantial evidence.

[18] Prosser points to his testimony and that of Mills and Sampsel, both of whom agreed with Prosser's testimony that the shoreline had been lengthened by the Dredging. The ALJ concluded that while their testimony supported a finding that the Dredging had straightened the shoreline of the Property, it did not support a finding that the Dredging had lengthened the shoreline because Sampsel's father had "cleaned up" the shoreline, using new soil when necessary. Put another way, an originally uneven shoreline between two points, even if shifted slightly landward, would not necessarily be longer if it were also straightened in the process. In the end, it was ALJ's job to evaluate the testimony of witnesses and other evidence for credibility and weight, and the ALJ's evaluation of their evidence strikes us as neither arbitrary nor capricious. We will not second-guess the ALJ's determinations in this regard.[1]

---

[1] In reversing the final order of the Natural Resources Commission, the trial court relied on our decision in *Haynes v. Brown*, in which we stated that "the trial court may not refuse to consider and weigh competent, uncontradicted evidence" and that we will substitute our judgment for that of the trial court "when the evidence is all one way, and but one conclusion could be reached from the facts proved." 120 Ind. App. 184, 189, 190, 88 N.E.2d 795, 797 (1949). Even if *Haynes* would require the ALJ to credit Mills's and Sampsel's depositions if (1) they were uncontradicted and (2) only permitted one possible conclusion, they were not and did not, as explained above. Consequently, *Haynes* does not help Prosser.

We therefore reverse the trial court's reversal of DNR's denial of Prosser's application for a permit to construct a concrete seawall on the Property.

[19] The judgment of the trial court is reversed.

Crone, J., and Tavitas, J., concur.