**George W. GILTNER, Jr.,
Appellant–Defendant,**

v.

**Betty L. IVERS, Martin Zacharias,
Jr., and Bradi L. Zacharias,
Appellees–Plaintiffs.**

**No. 10A05–1010–PL–662.**

Court of Appeals of Indiana.

Sept. 21, 2011.

---

William C. Moyer, Lorch & Naville, LLC, New Albany, IN, Attorney for Appellant.

Robert G. Bottorff II, Applegate Fifer Pulliam LLC, Jeffersonville, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

George W. Giltner owned an undivided twenty-percent interest in a 100–acre parcel of land in Clark County. Betty L. Ivers owned the other eighty percent, and is in the process of selling her interest to her granddaughter Bradi Zacharias and Bradi's husband, Martin. The Zachariases and Ivers filed a complaint to compel partition of the land.[1] The trial court appointed three commissioners, who reported that Giltner should receive 16.5 acres in the southeast corner of the property. Giltner unsuccessfully moved to have the report set aside, and the trial court entered judgment in accordance with the division recommended in the report.

On appeal, Giltner argues that the report should have been set aside because: (1) it made no finding as to whether division would materially damage a party; (2) it did not reveal the property's value or the methodology used to value the property; (3) the division was not proportionate to the parties' ownership interests, and no reason was given for the disproportionality; and (4) it was neither signed and sworn nor made in open court. Giltner did not raise the fourth issue until his motion to correct error; therefore, we conclude that he waived that issue. As to the remaining three issues, we conclude that Giltner has not shown that he was preju-

---

1. Ivers was later dismissed by agreement of the parties. Although she does not participate in this appeal, pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court is a party on appeal.

diced; therefore, we affirm the judgment of the trial court.

### Facts and Procedural History

The 100–acre parcel of land is divided by Bethlehem–New Washington Road. The land to the east of the road is primarily open field suitable for farming. The land to the west of the road is primarily wooded. In a quiet title action, the Clark Superior Court determined that Giltner owned a twenty-percent interest in the property and that the estate of Fay Stout owned the other eighty percent. The estate's portion was conveyed to Ivers.

The Zachariases were interested in building a home somewhere on the wooded portion of the property. Ivers agreed to sell them her share of the property, but they were unable to obtain a loan because of Giltner's interest in the property. The Zachariases and Giltner attempted to negotiate a division of the land, but negotiations were unsuccessful as both parties were primarily interested in the wooded portion of the land. Nevertheless, the Zachariases began making monthly payments to Ivers toward the purchase of the property.

On June 8, 2009, Ivers and the Zachariases filed a complaint seeking partition of the land. Ivers was later dismissed by agreement of the parties. On January 13, 2010, the court appointed three commissioners to determine whether the property could be divided.

On February 4, 2010, the Zachariases filed proposed instructions to the commissioners. A few days later, Giltner filed notice that he accepted the instructions proposed by the Zachariases. The instructions informed the commissioners that the court had "preliminarily determined the property should be partitioned" and that their job would be "to report to the court as to whether the Subject Property can be fairly physically divided as between the 20% interest holder and the 80% interest

holders, and if so how the division should be made." Appellant's App. at 30. The commissioners were instructed to submit a written report, "which you must each attest to under oath." *Id.* at 31. The report "must first state whether the Subject Property may be divided between the parties without damage to either of the parties." *Id.* Regarding damage, the commissioners were instructed:

> The determination of whether either party is materially damaged by a particular division is left to your discretion, but must be guided by the value of the Subject Property. Thus, you should determine the value of the total Subject Property, then determine a division of the Subject Property so that both of the parties get their respective share of that value. This could result in either party being given a greater or lesser proportion of the Subject Property than their respective share of the Subject Property.

*Id.* at 32. To determine the value of the property, the commissioners were instructed that they could consider the current use of the property as well as potential uses for the property. Finally, the commissioners were instructed to "maintain a file containing all information that supports the report you file in this case," which would be discoverable by the parties. *Id.* at 33. There is no indication in the record that either party requested that the commissioners consider that they both preferred the wooded land because of its aesthetic qualities.

On April 21, 2010, the commissioners filed their report. The entire text of the report is as follows:

> In regards to the above mentioned property we have concluded the property can be physically divided between the 20 percent interest holder and 80 percent interest holder.

The division would be as follows and shown on attached addendum:

> *20% Interest*—16.5 acres of the southern portion of the 36.5 acre tract located on the east side of Bethlehem New Washington Road.
>
> *80% Interest*—20.0 acres of the northern portion of the 36.5 acre tract located on the east side of Bethlehem New Washington Road plus the remaining 63.5 acres located on the west side of Bethlehem New Washington Road.

*Id.* at 37. Thus, the commissioners proposed that Giltner receive less than twenty percent of the total area of the land and none of the wooded land.

On July 7, 2010, Giltner filed a motion to set aside the commissioners' report. The motion alleged that the report "is not in proper form and is unreasonable in its division of the real estate." *Id.* at 44. A hearing was held the following day. Giltner testified that he had regularly taken vacations to the wooded portion of the property since he was a young boy. Giltner had memories of going there with his father and grandfather. He currently lives in Arizona with his wife and son, and he takes his son and other family members to the property once every year or two. His activities there included hiking, camping out in an old barn that is no longer standing, hunting, and having cookouts. He particularly admired a stream and waterfall that run through the woods. Giltner offered into evidence several pictures from family vacations dating between about 1978 and 2008. Giltner testified that he had no interest in owning a portion of the field on the east side of the roadway and did not intend to farm it or otherwise use it. However, Giltner proposed that he receive a 195–foot–wide strip of land running the entire length of the southern boundary. Giltner did not wish to have a strip along the northern boundary because he did not feel that it was representative of the beauty of the wooded portion.

Bradi was the only other witness at the hearing. She testified that her mother and grandmother both live near the property, and she also had childhood memories of spending time in the woods. Bradi stated that she passes the property on a daily basis, but had never seen Giltner there. Her mother, aunt, uncle, grandmother, and a conservation officer who sometimes monitored the property for them could recall seeing Giltner there only twice. Bradi testified that she and her husband wanted to get a bank loan so that they could give Ivers a lump sum because she is elderly and in poor health. Bradi claimed that Giltner had always wanted the northern portion because that is where the old barn had been. Bradi stated that they had made various offers to Giltner, at least one of which included the northern end of the wooded portion, but Giltner had rejected those offers and been hostile toward them.

On July 15, 2010, the court issued an order confirming the commissioners' report. The court found that Giltner had not established good cause to set aside the report because the commissioners had not been instructed to consider sentimental value and Giltner had agreed to those instructions. Further, the court found that Giltner "did not present evidence showing the Commissioners failed to follow the court's instructions [or] the statutes governing commissioners' reports on partition." *Id.* at 10.

On August 12, 2010, Giltner filed a motion to correct error. Giltner argued that the commissioners had not complied with Indiana Code Section 32–17–4–7, which requires commissioners to take an oath prior to performing their duties, and Indiana Code Section 32–17–4–9, which requires that the commissioners' report either be

signed and sworn or made in open court. Giltner's motion was deemed denied on September 27, 2010. Giltner now appeals.

### Discussion and Decision

■ A person who holds an interest in land as a joint tenant or tenant-in-common may compel partition of the land. Ind. Code § 32–17–4–1. The trial court makes a preliminary determination whether the land should be sold or partitioned. Ind. Code § 32–17–4–4. When a court enters an interlocutory judgment of partition, the court appoints three commissioners to determine how the land should be divided. Ind.Code §§ 32–17–4–4 and –6. The commissioners must "report to the court regarding their activities." Ind.Code § 32–17–4–9(a). The commissioners must specify the shares assigned to each party unless they determine that the land cannot be divided "without damage to the owners." Ind.Code §§ 32–17–4–9 and –12(a). The court may set aside the report if it determines that "good cause" exists. Ind.Code § 32–17–4–11(a). The party objecting to the commissioners' report bears the burden of showing good cause. *See Kern v. Maginniss,* 55 Ind. 459, 461 (1876) (holding that if the appellees had objections to the commissioners' report, they should have shown good cause against it and comparing their burden of proof to that of setting aside a jury verdict). If the report is set aside, the court either recommits the duty of partition to the commissioners or appoints new commissioners. Ind.Code § 32–17–4–11(b).

■ In this case, the commissioners recommended a division, and the trial court confirmed it. As the party objecting to the commissioners' report, Giltner had the burden of showing good cause to set it aside. *See Kern,* 55 Ind. at 461. He is now appealing from a negative judgment and must show that the judgment is contrary to law. *Pardue v. Perdue Farms, Inc.,* 925 N.E.2d 482, 488 (Ind.Ct.App.

2010), *trans. denied.* A judgment is contrary to law if the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead only to a conclusion opposite that reached by the trial court. *Id.*

Giltner argues that the report should have been set aside because: (1) it made no finding as to whether division would materially damage a party; (2) it did not reveal the property's value or the methodology used; (3) the division was not proportionate to the parties' ownership interests, and no reason was given for the disproportionality; and (4) it was neither signed and sworn nor made in open court.

■ The Zachariases advance a number of reasons why they believe that Giltner has waived each of these issues. First, they argue that Giltner did not timely object to the report on any of these grounds. Although Giltner's motion to set aside the report is not a model of clarity, we conclude that his first three arguments are within the scope of the issues that he raised in that motion. The Zachariases are correct, however, that Giltner did not object to the report on the ground that it was neither signed and sworn nor made in open court until he filed his motion to correct error. A party waives an issue by presenting it for the first time in a motion to correct error. *Prior v. GTE North Inc.,* 681 N.E.2d 768, 773 n. 5 (Ind.Ct.App.1997), *trans. denied.*

■ The Zachariases also argue that Giltner waived his arguments by filing a "Motion for Agreed Order Regarding Commissioners." Appellees' App. at 4. In that motion, the parties indicated that they had discovered that one of the commissioners was a resident of Floyd County rather than Clark County. *See* Ind.Code § 32–17–4–6 (requiring commissioners to be disinterested freeholders residing in the county where the land at issue is situated).

The parties agreed to waive any objection based on Indiana Code Section 32–17–4–6. None of Giltner's arguments relate to the residence of a commissioner. Moreover, the agreed order was entered on March 30, 2010, before the commissioners completed their report, so Giltner could not have known what objections he might have to the report at that time.

■ The Zachariases also contend that Giltner waived his arguments by agreeing to their proposed instructions to the commissioners. The instructions state that the report "must first state whether the Subject Property may be divided between the parties without damage to either of the parties." Appellant's App. at 31. Therefore, we fail to see how Giltner could have waived his argument that the report made no finding concerning material damage by agreeing to the instructions.

The instructions also indicated that the commissioners' determination

> must be guided by the value of the Subject Property. Thus, you should determine the value of the total Subject Property, then determine a division of the Subject Property so that both of the parties get their respective share of that value. This could result in either party being given a greater or lesser proportion of the Subject Property than their respective share of the Subject Property.

*Id.* at 32. While the instructions do not explicitly require the commissioners to spell out their valuation and methodology in their report, we cannot agree with the Zachariases that Giltner should have expected, based on his agreement with these instructions, that the commissioners' report would contain no information about how they reached their decision or what they did to comply with the instructions.

■ Nor can we agree with the Zachariases that the statutory scheme contemplates that the commissioners will report only their suggested division and nothing else. Indiana Code Subsection 32–17–4–9(a) requires the commissioners to "report to the court regarding their activities," and Subsection (c) requires them to "specify the shares assigned to each party." If the commissioners' "activities" consist only of making a division, then these two subsections are redundant. The commissioners should include the information and reasoning supporting their suggestions so that the parties can make an informed decision whether to challenge it and the trial court can make a reasoned decision whether to confirm it.

■ Although we agree with Giltner that the commissioners' report is technically inadequate, we conclude that he has not shown prejudice and therefore is not entitled to reversal. *See Selvage v. Green,* 45 Ind.App. 642, 644, 91 N.E. 357, 357 (1910) (affirming partition of land where appellant failed to show prejudice). The commissioners were instructed to make a finding regarding whether dividing the land would cause material damage to a party, but did not explicitly do so. However, the fact that they recommended a division at all indicates that they believed that the land could be fairly divided; the alternative to dividing the land is to sell it, a result that neither party wanted. *See* Appellant's App. at 30 (commissioners were instructed to report "whether the Subject Property can be fairly physically divided as between the 20% interest hold and the 80% interest holders, *and if so* how the division should be made") (emphasis added); Ind.Code § 32–17–4–12 (setting out procedures for sale of land in the event that it cannot be divided without damage to the owners).

We also note that the commissioners in this case were instructed to maintain a file of all information supporting their report, and that the instructions further provided

that this information would be discoverable by the parties. There is no indication in the record that Giltner attempted to access this information. Although the report was lacking in detail, Giltner has not shown that the information that he wanted concerning the commissioners' methodology and reasoning was not actually available to him.

To the extent that Giltner is arguing that the commissioners and the trial court should have considered the fact that he and the Zachariases both wanted the wooded portion of the land because of its aesthetic qualities, we note that Giltner did not ask that the commissioners be instructed to consider the parties' preferences. There is no indication that the commissioners were even aware of the parties' preferences. Although Giltner provided evidence to the court that the wooded portion of the land held great sentimental value for him, Bradi's testimony suggested that his claims were exaggerated and that he intended to oppose any division that might be made. It is the province of the trial court to weigh conflicting testimony, and we cannot say that the court clearly erred. *See Pardue,* 925 N.E.2d at 488 (when applying the clearly erroneous standard, we do not reweigh evidence). Therefore, we affirm the judgment of the trial court.

Affirmed.

BAILEY, J., and MATHIAS, J., concur.