## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 10 2020, 8:23 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David R. Phillips
Shaw Law Office
Valparaiso, Indiana

ATTORNEY FOR APPELLEE

James L. Clement, Jr.
Clement Law Firm LLC
Crown Point, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Richard J. Mahoney, <br> *Appellant-Plaintiff*, <br><br> v. <br><br> Kevin Wolfe and Maxine Wolfe, <br> *Appellees-Defendants* | November 10, 2020 <br><br> Court of Appeals Case No. 20A-CT-748 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable John M. Sedia, Judge <br><br> Trial Court Cause No. 45D01-1903-CT-327 |

**Crone, Judge.**

## Case Summary

[1]     Kevin and Maxine Wolfe obtained a building permit for and erected a shed on their property. Their neighbor, Richard J. Mahoney, filed a complaint alleging

that the shed's location violates the local zoning ordinance and therefore is a nuisance. After a bench trial, the court found no zoning violation and entered judgment for the Wolfes. Mahoney now appeals, arguing that the trial court erred. We affirm.

## Facts and Procedural History

[2] The relevant facts most favorable to the trial court's judgment are as follows. Mahoney lives in a residence in Whiting that is situated on Lot 6 of the subdivision plat. The Wolfes own Lot 7, which abuts the western boundary of Lot 6. The Wolfes also own Lot 8, which abuts the southern boundary of Lots 6 and 7. A north-south bicycle trail runs near the western boundary of Lots 7 and 8, and to the west of the trail is Wolf Lake. The Wolfes' residence takes up roughly the western half of Lot 8. This is a plat survey of the lots:



Ex. Vol. at 12 (Plaintiff's Ex. 3).

[3]     In the summer of 2018, a contractor hired by the Wolfes used this survey to apply for a building permit from the City of Hammond Building Department to install an eleven-by-thirteen-foot concrete pad on Lot 7. The contractor showed Department employees the planned location of the pad with the hand-drawn rectangle with an "X" shown above. *See* Tr. Vol. 2 at 66 (Kevin testifying that

the contractor "asked for a plat of survey from us, and then he drew where the plot was going to be and turned that in to the City of Hammond."). In August 2018, the Department issued a permit for the pad, which was installed soon afterward. Later that year, Kevin used the same survey to apply for a building permit to erect a ten-by-twelve-by-ten-foot shed on the pad. In November 2018, the Department issued a permit for the shed, which was erected later that year.

[4]     In March 2019, Mahoney filed a complaint against the Wolfes, alleging that their erection of the shed deprived him "of the fair enjoyment of his land by maliciously obstructing his lake view" and that the shed is a nuisance because it "violates the Hammond City Zoning Ordinance which prohibits accessory buildings from being [in] side yards." Complaint at 3.[1] Wolfe requested "an order requiring [the Wolfes] to abate the nuisance by removing the shed." *Id*. In March 2020, after a bench trial, the trial court issued an order that reads in relevant part as follows:

> The relevant part of Ordinance 8514, the City of Hammond Zoning Ordinance, provides, in Section 18.60, the following:
>
> … B. In residential districts detached accessory buildings shall not be erected in any yard, except a back [sic[2]] yard.

---

[1] Mahoney's appendix does not contain a copy of his complaint, which we obtained from the Odyssey case management system. We remind Mahoney's counsel that an appellant's appendix "shall contain" copies of "pleadings and other documents from the Clerk's Record … that are necessary for resolution of the issues raised on appeal[.]" Ind. Appellate Rule 50(A)(2)(f). The trial court's order does not mention either "nuisance" or "abatement," and thus Mahoney's complaint provides crucial context for his appeal.

[2] Mahoney notes that the zoning ordinance actually uses the term "rear yard." Appellant's App. Vol. 2 at 13.

… D. No detached accessory building shall be located closer than 10 feet (3.05 m) to any main building no[r] … closer than 3 feet (.91 m) to any lot line.

No probative evidence was presented at trial that the shed was closer than 3 feet from the lot line. The lot upon which the shed was built had no buildings upon it at all, so, by definition, the lot could not have a back, side or front yard, and the 10 foot distance requirement from a main building could not apply. The location of the shed was in compliance with the Hammond Zoning Ordinance.

Appealed Order at 2. Accordingly, the trial court entered judgment in favor of the Wolfes. Mahoney now appeals.

## Discussion and Decision

[5] Mahoney contends that the trial court erred in concluding that the shed's location complies with the zoning ordinance. As the party who bore the burden of proof at trial, Mahoney appeals from a negative judgment. *Universal Auto, LLC v. Murray*, 149 N.E.3d 639, 642 (Ind. Ct. App. 2020). He "may prevail on appeal only upon establishing that the judgment is contrary to law." *Estate of Kappel v. Kappel*, 979 N.E.2d 642, 651 (Ind. Ct. App. 2012). "A judgment is contrary to law if the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead only to a conclusion opposite that reached by the trial court." *Giltner v. Ivers*, 954 N.E.2d 1035, 1040 (Ind. Ct. App. 2011).

[6] The sum and substance of Mahoney's argument, which takes up slightly more than one page of his eight-page brief, is this: "The undisputed evidence shows that the Wolfs [sic] place [sic] their shed in the side yard of their home, despite

receiving a permit to put it in their back yard. Their placement of the shed shows a clear violation of the ordinance." Appellant's Br. at 6. Mahoney offers nothing more than this conclusory allegation in attempting to establish that the Wolfes erected the shed in their side yard, as opposed to their back/rear yard, as those terms might be defined by the zoning ordinance.[3] "Bald assertions of error unsupported by either cogent argument or citation to authority result in waiver of any error on review." *Pasha v. State*, 524 N.E.2d 310, 314 (Ind. 1988). "It is an elementary rule of appellate practice that the appellant bears the burden of demonstrating error. We refuse to sift through the record attempting to locate trial court error so that we might state appellant's case for him."[4] *Matter of Trust of Loeb*, 492 N.E.2d 40, 42 (Ind. Ct. App. 1986) (citation omitted), *trans. denied*. Consequently, we affirm.[5]

---

[3] We note that the Building Department was fully aware of the proposed location of the Wolfes' shed and issued a building permit authorizing its erection. As such, it is reasonable to presume that the Department determined that the shed's location does not violate the zoning ordinance. There is no indication that Mahoney has appealed the Department's decision to the Lake County Board of Zoning Appeals.

[4] Here, the dissent has stated Mahoney's case for him. Most of the zoning ordinance provisions quoted by the dissent do not appear in the record before us, let alone in Mahoney's brief. We have no qualms about taking judicial notice of local ordinances or conducting independent research, but we must draw the line at abandoning our role as impartial arbiters and becoming a party's advocate; this is unfair to the opposing party, who has no opportunity to respond to an argument that the appellant did not make. "In determining whether a party has waived an issue on appeal, we look to whether the brief is so deficient that the reviewing court is required to make a party's argument upon its behalf." *Shewmaker v. Etter*, 644 N.E.2d 922, 930 (Ind. Ct. App. 1994), *adopted by Hammes v. Brumley*, 659 N.E.2d 1021 (Ind. 1995). Mahoney's brief meets this threshold, and we decline to make his argument on his behalf.

[5] Because Mahoney has failed to establish that the trial court erred in concluding that the shed's location does not violate the zoning ordinance, we need not address his argument that the alleged violation constitutes a nuisance and that he is entitled to an abatement of that nuisance.

Affirmed.

Robb, J., concurs.

Brown, J., dissents with opinion.

| Richard J. Mahoney, | Court of Appeals Case No. |
| *Appellant,* | 20A-CT-748 |
| v. | |
| Kevin Wolfe and Maxine Wolfe, | |
| *Appellees.* | |

**Brown, Judge, dissenting.**

I respectfully dissent and would reverse and remand. Mahoney argues the Wolfes' placement of their shed violates the zoning ordinance. Based upon a review of the evidence and the ordinance, I agree.

The August 1, 2018 permit listed the type of work as installing a concrete pad "in the rear of the house." Defendants' Exhibit 5. The permit listed parcel number 26-35-0009-0008 and stated: "This building permit is issued assuming that all information submitted is true." *Id.* The November 21, 2018 permit described the type of work as: "Installing shed on concrete slab, shed totaling 141 sq ft." Defendants' Exhibit 6. The permit listed parcel number 26-35-0009-0008, did not specify the yard in which the shed was to be installed, and stated: "This building permit is issued assuming that all information submitted is true.

The issuance of this permit does not constitute the approval of any unauthorized or illegal use." *Id.*

[10] City of Hammond Zoning Ordinance No. 8514 provides in part:

Section 18.60 ACCESSORY BUILDINGS

Accessory buildings, except as otherwise permitted in this Ordinance, shall be subject to the following regulations:

* * * * *

B. In residential districts detached accessory buildings shall not be erected in any yard, except a rear yard.

* * * * *

D. No detached accessory building shall be located closer than 10 feet (3.05m) to any main building nor shall it be located closer than 5 feet (1.52m) to any side or rear lot line with eaves, no closer than 3 feet (.91m) to any lot line.

Plaintiff's Exhibit 1.

[11] The Ordinance also provides:

Yards - The area of each lot in which no building or structure shall be erected. The size of such area is determined by the distance from the property lines to the building lines.

1. Front - The minimum required open space, extending the full width of the lot from the property line to the building line.

2. Side - The minimum required open space extending the full depth of the lot and extending from the side lot line to the nearest point of the main building line.

3.  <u>Rear</u> - The minimum required open space extending the full width of the lot from the rear lot line to the nearest point on the main building line.

4.  <u>Corner Side Yard</u> - A side yard which faces a public street.

City of Hammond Zoning Ordinance No. 8514.[6]  It defines "Open Space" as "[t]he portion of the gross site area that is landscaped or that is usable and maintained for recreational purposes (including lawns, patios, and usable rooftops)."  *Id.*  "Lot" is defined as "[a] parcel of land occupied or intended for occupancy by a use permitted in this Ordinance, including one (1) main building and its accessory buildings, and the open spaces required by this Ordinance, and having its principal frontage on a street, or an officially designated and approved place."  *Id.*  "Lot Line, Rear" is defined as a "lot line which is opposite and most distant from the front lot line and, in the case of an irregular or triangular shaped lot, a line ten (10) feet (3.05m.) in length within the lot, parallel to and at the maximum distance from the front lot line."  *Id.*  "Lot Line, Front" is defined as follows:

> In the case of an interior lot, a line separating the lot from the street or place; and in the case of a corner lot, a line separating the narrowest street frontage of the lot from the street, except in

---

[6] While the parties cite to only one portion of the City of Hammond Zoning Ordinance No. 8514, Ind. Evidence Rule 201(a) provides "[t]he court may judicially notice . . . the existence of . . . ordinances of municipalities" and "[a] court may judicially notice a law, which includes . . . codified ordinances of municipalities . . . ."

cases where deed restrictions in effect specify another line as the front line.

*Id.* "Lot Line, Side" is defined as "[a]ny lot boundary line not a front line or a rear lot line." *Id.*

[12] We use the same methodology to interpret ordinances as statutes. *Siwinski v. Town of Ogden Dunes*, 949 N.E.2d 825, 828 (Ind. 2011). The first step in statutory interpretation is determining if the legislature has spoken clearly and unambiguously on the point in question. *Id.* If a statute is clear and unambiguous on its face, no room exists for judicial construction. *Id.* If possible, every word must be given effect and meaning, and no part should be held to be meaningless if it can be reconciled with the rest of the ordinance. *Id.* We are not at liberty to construe a facially unambiguous statute. *Id.* We should also remember a cardinal rule of statutory construction, which is to "ascertain the intent of the drafter." *Id.* at 829 (quoting *State v. Carmel Healthcare Mgmt., Inc.*, 660 N.E.2d 1379, 1386 (Ind. Ct. App. 1996), *trans. denied*). We can ascertain intent "by giving effect to the ordinary and plain meaning of the language used." *Id.* (quoting *Clifft v. Ind. Dep't of State Revenue*, 660 N.E.2d 310, 316 (Ind. 1995)).

[13] "Our State has recognized that the purpose of zoning ordinances is 'to confine certain classes of uses and structures to designated areas.'" *Id.* (quoting *Ragucci v. Metro. Dev. Comm'n of Marion Cty.*, 702 N.E.2d 677, 679 (Ind. 1998)). The City of Hammond Zoning Ordinance No. 8514 provides: "*In residential districts*

detached accessory buildings shall not be erected in any yard, except a *rear yard*." Plaintiff's Exhibit 1 (emphases added).

[14] We may grant relief from a zoning board's decision only under certain circumstances and, "[i]f a court is faced with two reasonable interpretations of an ordinance, one of which is supplied by an administrative agency charged with enforcing the ordinance, the court should defer to the agency." *Essroc Cement Corp. v. Clark Cty. Bd. of Zoning Appeals*, 122 N.E.3d 881, 891 (Ind. Ct. App. 2019) (*quoting Hoosier Outdoor Advert. Corp. v. RBL Mgmt., Inc.*, 844 N.E.2d 157, 163 (Ind. Ct. App. 2006), *trans. denied*), *trans. denied*. However, neither the trial court nor the Wolfes cite authority for extending such deference to the mere approval of a building permit when a plan commission or board of zoning appeals does not further provide an interpretation of an ordinance. Under the phrase "APPROVED BY" and above the phrase "Building Department" on the building permit approving the installation of the shed, the signature displayed is upside down, suggesting at the least that the signature was applied using a stamp. Defendants' Exhibit 6. Further, the building permit for the shed expressly states that its issuance "does not constitute the approval of any unauthorized or illegal use." *Id.*

[15] The Ordinance clearly forbids the placement of detached accessory buildings "in any yard, *except a rear yard*." Plaintiff's Exhibit 1 (emphasis added). I would conclude that the Ordinance is not ambiguous and that the second permit, submitted for the shed, did not specify in which yard the shed was to be placed.

[16]     Examining Lot 7 by itself, the record indicates that it is a vacant lot and thus can have no "rear yard" because the rear yard is defined by the Ordinance with respect to the main building line or as "[t]he minimum required open space extending the full width of the lot from the rear lot line to the nearest point on the main building line." City of Hammond Zoning Ordinance No. 8514. Accordingly, an examination of the placement of the shed on the vacant lot alone, Lot 7, indicates that the placement of the shed was in violation of the Ordinance. I disagree with the trial court's reasoning that a shed can be built anywhere on any vacant lot because it would render meaningless the Ordinance's requirement that "detached accessory buildings shall not be erected in any yard, except a rear yard." Plaintiff's Exhibit 1.

[17]     Even an examination of Lots 7 and 8 as a single parcel indicates that the placement of the shed is in violation of the Ordinance. When asked "is there any way we could interpret where [the shed] is as being in the rear of the Wolfes' house," Mahoney answered in the negative. Transcript Volume II at 21. Maxine testified that her back yard contained a deck that extended all the way to their property line. During the cross-examination of Kevin, he indicated that the plat showed that his front door was right where the concrete walk was located. The testimony of Maxine and Kevin indicates that the front of their lot was on the part of the lot facing Maiden Lane and where the concrete walk extends out from the house. This comports with the Ordinance which defines "Lot Line, Front" as:

In the case of an interior lot, a line separating the lot from the street or place; and in the case of a corner lot, a line separating the narrowest street frontage of the lot from the street, except in cases where deed restrictions in effect specify another line as the front line.

City of Hammond Zoning Ordinance No. 8514. If Lots 7 and 8 are considered together, the front lot line is along Maiden Lane and thus the rear yard, which is defined by the Ordinance as "[t]he minimum required open space extending the full width of the lot from the rear lot line to the nearest point on the main building line," is to the rear of the house. *Id.* Applying the definitions in the Ordinance, the plat reveals that the shed was constructed, if anything, in the side yard and clearly not the rear yard as required by the Ordinance.

[18]   Accordingly, in either scenario, the shed was placed in violation of the Ordinance. Based upon the foregoing, I would reverse the trial court's order and remand for further proceedings.[7]

---

[7] While I conclude that the placement of the shed violated the Ordinance, I do not express an opinion as to the extent of Mahoney's injury or the proper remedy. I also note that the Ordinance provides for variances under certain circumstances.